Motion to strike bill of exceptions allowed May 17; argued
November 17; affirmed December 13, 1932;
rehearing denied January 17, 1933

## STATE *v.* TERWILLIGER

(11 P. (2d) 552, 16 P. (2d) 651)

*John F. Conway,* of Portland, for appellant.

*Lotus L. Langley,* District Attorney, and *Charles
S. Cohn,* Deputy District Attorney, both of Portland,
for the State.

ROSSMAN, J. This is a motion by the State for
an order to strike from the files the bill of exceptions

on the ground that the appellant did not present the same within the time for so doing as regulated by 1931 Sessions Laws, chapter 49, which provides:

"* * * A proposed bill of exceptions may be tendered by presenting it to the clerk of the court within sixty (60) days after the entry of the judgment or decree, or within such further time as may be granted by order of the court if application is made during the said period of sixty (60) days or within any extension that may be granted."

■ The trial order showing the return of the verdict of guilty and continuing the cause for sentence to November 5, 1931, is dated November 2, 1931. November 5, 1931, sentence was imposed, and upon the same day the trial judge signed the order of commitment. January 8, 1932, the defendant obtained an order extending the time for filing a bill of exceptions to and including February 1, 1932. February 1, 1932, he obtained an order extending the time to March 15, 1932. March 14, 1932, the time was extended to March 31, 1932. March 29, 1932, the bill was presented and signed. An order, over the signature of the trial judge, and accompanying the bill of exceptions, recites: "* * * More than sixty days have elasped from the date of the order of commitment and the date of the order extending time for the filing of the bill of exceptions." It is thus evident that a gap occurred between the sixty-day period and the order of January 8, 1932.

1931 Session Laws, chapter 49, amended section 2-703, Oregon Code 1930, which, prior to amendment, read thus:

"* * * A proposed bill of exceptions may be tendered by presenting it to the clerk of the court within sixty (60) days after the entry of the judgment or decree, or within such further time as may be granted by order of the court."

The enactment just quoted was made a part of our laws by 1929 Session Laws, chapter 356. Prior to 1929, our statutes imposed no limitation upon the time within which the circuit court could settle a bill of exceptions, and for that reason the decisions of this court held that the only limitation upon the time was the trial court's sound discretion: *Weinstein v. Wheeler,* 127 Or. 406 (257 P. 20, 271 P. 733, 62 A. L. R. 574). Following the passage of the 1929 act this court in *Pacific Finance Corp. v. Ellithorpe,* 134 Or. 601 (280 P. 658, 289 P. 1058), held valid a bill of exceptions settled by the circuit court after the sixty-day period had elapsed, even though no extension had been obtained; and in *Senner v. Danewolf,* 139 Or. 93 (293 P. 599), we held valid a bill of exceptions presented within an extended time although the extension had not been obtained until the sixty-day period had expired. In both cases we held that the new legislation had not disturbed the discretionery power of the trial judge, and that it did not demand that the extended time must be joined on to the original time without gap by an order made before existing periods had expired. These two decisions were followed by the enactment of 1931 Session Laws, chapter 49. It is very evident that the legislature was dissatisfied with the law as interpreted by our decisions and intended by its 1931 enactment to effect a change. The act now before us is expresed in clear and unambiguous language. In *State ex rel. v. Stapleton,* 139 Or. 402 (10 P. (2d) 600), we gave effect to its evident purpose by dismissing a petition for a writ of mandamus which sought to compel a trial judge to settle a bill of exceptions presented after the sixty-day period had elapsed without an extension thereof having been obtained. The plain purpose of the amendment demands that the motion of the State must be allowed.

Fairness to the able lawyer who now represents the defendant suggests that we should not terminate this decision without stating that he was not retained in this litigation until the above noted tardiness had already occurred.

Motion to strike allowed.

BEAN, C. J., RAND, BROWN, CAMPBELL and KELLY, JJ., concur.

BELT, J., absent.

---

ON THE MERITS
(16 P. (2d) 651)

*Jay H. Stockman,* of Portland (O. P. Coshow and John F. Conway, both of Portland, on the brief), for appellant.

*Charles S. Cohn,* Deputy District Attorney, of Portland (Lotus L. Langley, District Attorney, of Portland, on the brief), for the State.

BROWN, J.  As counsel stated in their argument herein, there is but one issue in this case, and that is the constitutionality of our Blue Sky law, codified

as sections 25-1301 to 25-1328, Oregon Code 1930. The particular provision thereof that the defendant assails as unconstitutional is designated subdivision 10 of section 25-1302, Oregon Code 1930, relating to application for permit to sell securities, which section provides that, before any permit shall issue for such purpose, the applicant shall file with the corporation commissioner certain data specifically set out therein, together with "such other information as the corporation commissioner may require." This quoted subdivision the defendant insists is violative of our fundamental law for the reason that, he argues, it is unreasonable and arbitrary.

The law involved in this case is well settled in our own jurisdiction, and it is entirely unnecessary to go abroad in search of precedent for the holding of the court herein.

■ The early case of *State v. Briggs,* 45 Or. 366 (77 P. 750, 78 P. 361, 2 Ann. Cas. 424), is a valuable case dealing at considerable length with the question at issue, and it is directly in point here. In that case it was contended that the Barber Act of 1903 was unconstitutional in that the legislature had not therein fixed the qualifications of a barber, but had delegated to a board the power to determine them. The act defined what should constitute the occupation of a barber (Laws 1903, p. 31, § 9), provided for the appointment of a board of examiners, defined its powers and duties, among others, "to make such bylaws as it may deem necessary not inconsistent with the constitution of this state, or with the provisions of this act, and shall prescribe the qualifications of a barber of this state" (p. 27, § 2). The act declared that it should be unlawful for any person not registered to practice the occupation of a barber or conduct

a barber shop or barber school without the sanction of the board, and provided a penalty for the violation of its provisions. The defendant in that case was convicted for conducting a barber school in violation of the act. However, the trial court held the act to be unconstitutional and void on the ground that it delegated to the board of barber examiners legislative authority, and vested in them power to issue and withhold licenses arbitrarily and at pleasure.

On appeal this court, speaking through Mr. Justice R. S. BEAN in an able and exhaustive opinion, held that if the law was open to either objection the judgment must be affirmed, for the reason, first, that the power conferred upon a legislature to make laws could not be delegated by that department to any other authority, and, second, that "any statute attempting to vest in a board, officer, or tribunal arbitrary power to issue or withhold permission or license to practice any trade, profession or calling without regard to discretion, in the legal sense of that term, or without regard to the qualifications of the applicant, is void: *White v. Holman,* 44 Or. 180 (74 P. 933, 1 Ann. Cas. 843) ; *Yick Wo v. Hopkins,* 118 U. S. 356 (6 S. Ct. 1064, 30 L. Ed. 220) ; *Noel v. People,* 187 Ill. 587 (58 N. E. 616, 52 L. R. A. 287, 79 Am. St. Rep. 238)." In his valuable and instructive treatise, the learned judge said:

"While the law defines what shall constitute a barber, it does not prescribe the standard or degree of knowledge, learning, experience, or qualification which shall be required before applicants shall be licensed or authorized to practice or follow the trade or calling, but leaves that matter to be determined by the board of examiners. This, it is argued, renders the act void, because it is a delegation of legislative authority, and vests in the board arbitrary and unregulated powers. The position of the defendant is that, while the legis-

lature may lawfully regulate the trade or calling of a barber, and require all persons following it to register, or obtain certificates from the board of examiners, it must provide in the act the standard of qualification required, leaving to the board the mere duty of ascertaining whether the appellant possesses such qualification.''

In answer to this contention, the court said:

''The constitutional inhibition (against conferring upon any other authority the right to determine what the law shall be), however, cannot be extended so as to prevent the legislature from conferring authority upon an administrative board to adopt suitable rules, by-laws, regulations, and requirements to aid in the successful carrying out and execution of a law it has passed. The doctrine on this subject is admirably stated by Mr. Justice Agnew, in Locke's Appeal, 72 Pa. 491, 13 Am. Rep. 716, as follows:

'' 'Then the true distinction, I conceive, is this: The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the lawmaking power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation.'

''It is well settled by a long line of authorities in harmony with this doctrine that the power given to an administrative board like the one now under consideration to prescribe rules and regulations reasonably adapted to carry out the purposes and object for which the board is created does not constitute an improper delegation of legislative authority.''

Many authorities are cited and reviewed in support of the opinion in the Briggs case, some of which we shall mention here. Among others is the case of *Port*

*Royal Min. Co. v. Hagood,* 30 S. C. 519 (9 S. E. 686, 3 L. R. A. 841). In that opinion, which, in the view of the writer, was a practical one and based on sound reasoning, the court said:

"It is undoubtedly true that legislative power cannot be delegated, but it is not always easy to say what is and what is not legislative power, in the sense of the principle. The legislature is only in session for a short period of each year, and during the recess cannot attend to what might be called the business affairs of the state. From the necessity of the case, as well as the character of the business itself, that must be performed by agents appointed for that purpose—such as the railroad commission, regents of the lunatic asylum, the state board of canvassers of elections, sinking fund commission, etc. The numerous authorities cited in the argument show conclusively that, while it is necessary that the law itself should be full and complete as it comes from the proper lawmaking body, it may be—indeed, must be—left to agents in one form or another to perform acts of executive administration which are in no sense legislative."

Continuing its discussion in the Briggs case, the court announced that the legislature might properly delegate to a board the authority to determine what is a college in good standing, or a reputable college, within the intention of a law authorizing graduates of such a college to practice their profession, and cited in support thereof *Barmore v. State Board of Medical Examiners,* 21 Or. 301 (28 P. 8); *People ex rel. v. State Board of Dental Examiners,* 110 Ill. 180. It again announced, in substance, that the legislature must enact the law necessary to accomplish the purpose in view, "but it may be carried into execution by some officer or board appointed for that purpose, and such officer or board may be authorized to prescribe the qualifications of those desiring to follow such callings or professions."

Another case pointed out in the opinion is *West Virginia v. Dent*, 25 W. Va. 1, and *Dent v. West Virginia*, 129 U. S. 114 (9 S. Ct. 231, 32 L. Ed. 623), which involved the right to practice medicine. In the state of West Virginia every practitioner of medicine was required to obtain a certificate from the state board of health that he was a graduate of a reputable medical college, or that he had practiced medicine in the state continuously for 10 years prior to the passage of the act, or that he had been found upon examination by the medical board qualified to practice medicine in all its branches. The statute did not prescribe the standard of qualification which the board should exact or enforce in its examination of applicants, but left that entirely to the judgment of the board; and the law was held valid by both the Supreme Court of the state of West Virginia and of the United States.

The learned judge also directed attention to the case of *Smith v. Alabama*, 124 U. S. 465 (8 S. Ct. 564, 31 L. Ed. 508), wherein an Alabama act which empowered the board of examiners for locomotive engineers to determine the qualifications of engineers was held valid by both the Supreme Court of the State of Alabama and of the United States.

In conclusion, the court said:

"If it [board of examiners] should act arbitrarily or oppressively, its conduct might call for a remedy against the members of the board, but it would not furnish a ground for declaring the act invalid. People v. Hasbrouck, 11 Utah 291, 306, 39 P. 918; People ex rel. v. Warden, 144 N. Y. 529, 39 N. E. 686, 27 L. R. A. 718; People ex rel. v. Dental Examiners, 110 Ill. 180. * * * The law here in question provides for the appointment of a board, made up of persons skilled in the calling, to which the duties imposed are intrusted for performance, and to which is committed the power

of prescribing such qualifications for applicants applying for licenses desiring to practice the trade or calling of a barber as may be just and reasonable, and it must be presumed that the board will exercise fairly and impartially the powers conferred."

In the more recent case of *State v. Gerritson,* 124 Or. 525 (265 P. 422), this court, in reviewing the provisions of the Blue Sky law denouncing the sale of securities without a permit, used the following language:

"It may be very plausibly argued that the provisions of the statute give to the corporation commissioner arbitrary powers, but it must be remembered that the statute provides for a review of the power exercised by the commissioner in the courts. This, we believe, amply protects legitimate business and enterprises in this state: Or. L., § 6841" (§ 25-1310, Oregon Code 1930).

The case of *Livesay v. DeArmond,* 131 Or. 563 (284 P. 166, 68 A. L. R. 422), was prosecuted to test the validity and application of chapter 182, 1929 Session Laws, in involving the right of the board of county commissioners of any county, at its discretion, to waive or reduce the penalty or interest, or both, imposed for failure to pay taxes within the time prescribed by law, if, in the opinion of the board, such action would facilitate the collection of such taxes. This law was attacked as being unconstitutional, and the court, in passing upon the question, said, among other things:

"Any power, other than a legislative one, which the legislature may exercise, it may delegate: Wayman v. Southard, 10 Wheat 1, 6 L. Ed. 253. From this fact it necessarily follows that before a statute can be condemned as conferring legislative power upon an administrative body, it must be evident that the power conferred is legislative. Hence, at this point it is desirable to recognize the distinction between the dele-

gation of power to make law or complete an incomplete act, and the conferring of authority upon a commission or official to administer a law in a manner that involves the exercise of administrative discretion. Since the power to make a law includes discretion as to what it shall be this power can never be delegated, but the decisions display an increasing tendency, due to the complexity of our social and industrial activities, to hold as nonlegislative authority conferred upon commission and boards to determine the facts or state of things upon which the law intends to make its action depend. We quote from Minneapolis, etc., R. Co. v. Wisconsin R. Com., 136 Wis. 146, 116 N. W. 905, 17 L. R. A. (N. S.) 821, as follows:

" 'In the process of enacting a law, there is frequently necessary the preliminary determination of a fact or group of facts by the legislature; and it is well settled that the legislature may declare the general rule of law to be in force and take effect upon the subsequent establishment of the facts necessary to make it operative or to call for its application.' "

The court then cited *Stettler v. O'Hara,* 69 Or. 519 (139 P. 743, L. R. A. 1917C, 944, Ann. Cas. 1916A, 217), *State v. Briggs,* supra, *Portland Fish Co. v. Benson,* 56 Or. 147 (108 P. 122), and *State v. Gates,* 104 Or. 112 (206 P. 863).

■ Were we to assume that subdivision 10 under consideration in this case is unconstitutional, it could afford the defendant no saving grace.

Section 25-1328, Oregon Code 1930, provides:

"Should the court declare any section or clause of this act unconstitutional, then such decision shall affect only the section or clause so declared to be unconstitutional, and shall not affect any other section or clause of this act."

The meaning of this section of our Code is clear and plain. It follows that, if section 10 were eradicated

from the statute, the remainder of the act would stand, a subsisting and operative law.

Many are the cases in which the courts have been called upon to decide whether the unconstitutional portion or portions of a general statute were of sufficient importance to render the entire act unconstitutional.

In the case of *State ex rel. Pierce v. Slusher,* 119 Or. 141 (248 P. 358), we wrote:

"Recurring to the criminal provisions of the act [Income Tax Act], it is a well-established principle of statutory construction that, when an unconstitutional portion of an enactment is stricken out, that which remains, if complete in itself and capable of being executed in accordance with the apparent legislative intent, must be sustained: 26 Am. & Eng. Ency. of Law (2d Ed.), 570."

The case of *United States Automobile Service Club v. Van Winkle,* 128 Or. 274 (274 P. 308), was a suit instituted to test the validity of chapter 419, General Laws of Oregon, 1927, defining motor clubs for service and providing for licensing companies engaged in that service. In that case it was held that the classification provided for by section 4 of the act was not founded upon any substantial difference between the two classes mentioned, and was therefore violative of the Fourteenth Amendment of the Federal Constitution and also offended against Article I, section 20, of the Oregon Constitution. The court held that section 4 was unconstitutional and void, but at the same time declared that "this does not have the effect of making the other provisions of the act invalid, for the reason that section 4 may be separated from the remainder of the act without destroying or rendering nugatory the remainder of the act."

The case of *Standard Lbr. Co. v. Pierce,* 112 Or. 314 (228 P. 812), is additional authority for the holding

that if a statute is partly constitutional and partly unconstitutional and the unconstitutional part thereof is severable, the portion that is constitutional will stand, while that which is unconstitutional will be stricken out and rejected. See, also, the cases therein cited.

An examination of the statute under consideration shows beyond peradventure that subdivision 10, which reads, "such other information as the corporation commissioner may require," is severable, and that, if this provision were held to be unconstitutional and therefore eliminated from the provisions of the Blue Sky law, it would in no material way affect the result of this case.

The defendant invokes the doctrine announced in *Yick Wo. v. Hopkins,* 118 U. S. 356, which case he asserts is of great value. In this we fully agree. Much learning is embodied in the opinion rendered in that case; but there is nothing therein that in any way conflicts with, or tends to invalidate, our Blue Sky law. Yick Wo, a native of China and a subject of the Emperor of China, came to America in 1861, and for many years conducted a laundry in San Francisco, California. In 1880 a municipal ordinance was adopted making it necessary that any person, before operating, maintaining or carrying on a laundry within the corporate limits of the city and county of San Francisco, first secure a license therefor. At the time this ordinance became effective there were about 320 laundries in San Francisco, about 240 of which were owned and operated by subjects of China. Yick Wo was charged with the violation of the municipal ordinance involved, and was fined $10 and held to the custody of Sheriff Hopkins until released by a habeas corpus proceeding. It appears that, in the administration of the ordinance,

the board of supervisors grossly discriminated against the citizens of China and refused them licenses to conduct their laundries. The record clearly shows that all Chinese applications were, in fact, denied, and those of Caucasians granted, thus, in fact, making the discriminations, in the administration of the ordinance, which its terms permitted.

Clearly, the setting of facts in that case is far removed from the facts surrounding the case under consideration. The statutory provision assailed by the defendant in the case at bar does not attempt to clothe the corporation commissioner with arbitrary power. The statute creates the law, but leaves the lawmaking power where the sovereign people placed it. The only information that the corporation commissioner can lawfully require an applicant for a license to give is information pertinent to the inquiry; and in the event that such applicant is aggrieved he may have his day in court by an appeal. An excellent case sustaining this view is *Ex Parte Tindall*, 102 Okl. 192 (229 P. 125).

In conclusion, we direct attention to the following pronouncement emanating from the pen of Mr. Justice Holmes in *Springer v. Government of the Philippine Islands*, 277 U. S. 189 (48 S. Ct. 480, 485, 72 L. Ed. 845) :

"It does not seem to need argument to show that however we may disguise it by veiling words, we do not and cannot carry out the distinction between legislative and executive action with mathematical precision and divide the branches into watertight compartments, were it ever so desirable to do so, which I am far from believing that it is, or that the Constitution requires."

See the many instructive cases cited by the eminent jurist.

This case is affirmed.

BEAN, C. J., BELT and CAMPBELL, JJ., concur.