Boyd, Plaintiff in error, vs. THE STATE, Defendant in error.

*December 7, 1934—January 8, 1935.*

For the plaintiff in error.there were briefs by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *Charles F. Smith.*

For the defendant in error there was a brief by the *Attorney General, Fred Risser,* district attorney of Dane county, and *A. W. Kopp* of Platteville, special prosecutor, and oral argument by *Mr. Kopp* and *Mr. Risser.*

FOWLER, J. This case was before the court in *State ex rel. Kropf v. Gilbert,* 213 Wis. 196, 251 N. W. 478, upon *habeas corpus* proceedings brought by defendants Kropf, Farness, and Rogers to test the legality of their imprisonment on being held to the circuit court for trial upon preliminary examination. This court ruled that the defendants were properly held for trial. It was there held that such of the managing officers of the Boyd Company as participated in violations of criminal statutes by the corporation might be held criminally liable therefor. The trial herein followed the decision in that case. The facts involved are stated more in detail in the opinion in that case than we have deemed it necessary to state them herein. The defendant does not contend herein that the evidence introduced upon the trial.does not support his conviction. He assigns as error that the court, (1) refused to instruct that if Beecroft consented to the use of the proceeds of the sale of the·$226,000 bonds by the Boyd Company, the relation of debtor and creditor existed between the two companies; (2) misinstructed the jury with reference to the evidence of admissions by one defendant not made in the presence of another defendant being admissible against such other without giving the jury proper instructions as to conspiracy; (3) imposed sentences violative of the state constitution because so excessive as to constitute cruel and unusual punishment; (4) coerced the jury into agreeing upon a verdict; (5) wrongly submitted the

case upon the Blue Sky Law counts because that law is unconstitutional; (6) misinstructed the jury to the effect that the intent of the defendant in committing the acts charged was immaterial.

(1) It is claimed in substance that the court refused to instruct that if Beecroft consented to the sale of the $226,000 of bonds, the relation of creditor and debtor existed and there was no embezzlement.

While the court did not use the words debtor and creditor and say expressly that if the relation of debtor and creditor existed there was no embezzlement, it instructed, in substance, that to warrant conviction of any defendant the jury must be satisfied beyond a reasonable doubt that he authorized receipt of the proceeds of the bonds and *without the consent of the Beecroft Company fraudulently* converted the money to the use of the Boyd Company,—that is, applied the money to the use of the Boyd Company with intent to deprive the Beecroft Company of it. As a general instruction this was sufficient. It would not have added anything to this statement to say that the relation of creditor and debtor existed if the money was received with the consent of the Beecroft Company. It is the fact that the money was used with the consent of the Beecroft Company, if it were the fact, not the proposition of law that the relation of debtor and creditor existed, that would have exempted the defendant from criminal responsibility.

(2) The court specifically instructed the jury that no admission of any defendant was to be considered as evidence against any other defendant unless made to such other defendant or in his presence. This rendered unnecessary the statement of the rule relating to admissions of one conspirator being admissible against another or a statement of what constitutes conspiracy.

(3) The objection here made is in effect that because Boyd was seventy-two years of age at the time the sentences

were imposed the indeterminate sentence of from ten to twenty-five years imposed upon one embezzlement charge, with imprisonment from one to five years superimposed for the Blue Sky Law violations in case the fines imposed were not paid, was equivalent to imprisonment for life, and that imprisonment for life for the offenses committed violated sec. 6, art. I, of the state constitution, that prohibits imposition of excessive fines and cruel and unusual punishment.

The sentence prescribed by sec. 343.20 for embezzlement of $25,000 or over is not less than ten nor more than twenty-five years in the state prison. That prescribed for Blue Sky Law violations by sec. 189.16 (2) is a fine not exceeding $5,000, or imprisonment in the state prison not exceeding five years, or both. The sentences imposed for embezzlement were indeterminate, and were within the statutory limits. The defendant was convicted of embezzlement of $124,800 within one six-month period, and sentenced for this embezzlement for imprisonment from ten to twenty-five years. The other three sentences for embezzling $57,500, $49,500, and $3,500 during the three other respective six-month periods added nothing to the ten to twenty-five years' sentence, as the three sentences run concurrently. Sec. 189.16 (2) prescribes a punishment by imprisonment in the state's prison not exceeding five years, or by a fine not exceeding $5,000, or by both, for each of the blue sky violations charged. The punishments here imposed for those violations were well within the statutory limits, and were made to run concurrently, but superimposed on the sentence for embezzlement.

We do not consider the punishments prescribed by the legislature for the embezzlements as cruel or unusual. Nor do we regard the statutory fine prescribed by the legislature for Blue Sky Law violations excessive, or the imprisonment prescribed as cruel or unusual. If the statutory limits do not violate the constitutional prohibition involved, a sentence

within those limits cannot violate it. The trial judge was manifestly shocked, and justifiably so, by the magnitude of the crimes committed, both against the Beecrofts in embezzling $216,000 of their money, and against the bondholders, in rendering their lien against the Orpheum Theater worthless by making it subject to the lien of the Orpheum firsts and increasing the aggregate lien against the other two theaters by $216,000. The full responsibility for the embezzlement from the Beecrofts and for swindling the public rests upon Boyd. He was the instigator of the embezzlement, the prime mover in perpetrating the fraud upon the public. His guilt is vastly greater than that of Kropf who was also convicted of the embezzlement and Blue Sky Law charges. The latter was sentenced to imprisonment from ten to eleven years for embezzlement, practically the minimum, and to pay a fine of $500 on each of the blue sky convictions and imprisonment in the county jail for ten months in default of payment. It is not unfitting, not only that Boyd's punishment should correspond to the highest penalty designated by statute as punishment for his crimes, but that it should in some measure express the enormity of his guilt over that of Kropf whom he dragged to prison with him.

(4) It does not appear when the case was submitted to the jury. The verdict was returned at 3:50 p. m. At 3:15 p. m. the court called the jury into court and asked if they were making any progress and was informed by the foreman that they were. This was reiterated by the foreman five times. The court told the jury not to mention what understandings, if any, they had reached. The last inquiry was whether they had been making progress continually since they had been out, and the foreman answered that considering all the evidence they had to go through he thought they had. The court then made some general observations to the effect that the purpose of trials is to do abstract justice as far as possible, but that is unattainable this side of heaven; that appellate courts exist to correct the errors of trial courts;

that the end of controversy is desirable; that he (the trial judge) did not know whether the jury were divided or not, but looking at their faces, he thought he could say that no one of them would suffer his pride of opinion to prevent him from yielding to reason; that the jury should examine the ground and see if they could not agree; that there was a difference between firmness and stubbornness; that the jackass is the most stubborn creature on the face of the earth; that he (the trial judge) had respect for a firm man, but none for a stubborn man, who having said a horse was seventeen and a half hands high would stick to it to the end of doomsday; that as he looked at the jury he felt that none of them was that way. He then concluded his remarks as follows:

". . . And I see no reason why you ladies and gentlemen ultimately are not just as competent, just as able, just as likely to decide this case and decide it right, as the next jury that would be called upon this case would be.

"Now, I do not want you to understand by what I say that you are going to be made to agree, or you are going to be kept out until you do agree; that is not the idea. But I do want you to understand it is your duty and you must make an honest and sincere effort to arrive at a verdict. Jurors, as I stated, should not be obstinate; they should be open-minded; they should listen to the arguments of others, and talk matters over fully and fairly and freely, and make an honest effort, as fair-minded men and women to come to a conclusion as to all the issues in the given case.

"Now, will you retire to the jury room."

In view of the statement quoted we do not consider that the instructions as a whole gave the jury an incorrect idea of their duty respecting agreement or amounted to coercion. The statement quoted is substantially the same as was approved in *Barlow v. Foster,* 149 Wis. 613, 628, 136 N. W. 822. The propriety and the duty of the trial judge to impress on the jury their duty to arrive at a verdict, if an agreement may reasonably be reached, was so fully stated in the opinion in the *Barlow Case, supra,* that no further discussion of the subject here would serve any useful purpose.

(5) The defendant argues that sec. 189.03, Stats. 1929, in force at the time the acts charged were committed, is so indefinite and uncertain as to be unconstitutional and that it is so related to the rest of the Blue Sky Law as to render the whole of that law unconstitutional. We do not find it necessary to pass upon the constitutionality of the section of the law above cited. The defendant is not being prosecuted under that section and his rights are not at all affected by it. The section cited exempts from the provisions of the law an owner not an underwriter who sells his own securities "not being made in the course of continued or repeated transactions of a similar nature." The unconstitutionality claimed is based upon the language next above quoted. It is contended that this language is so indefinite and uncertain of meaning that it does not afford a standard by which one's guilt or innocence may be judged. As the defendant is not being prosecuted for selling his own securities, he is not in position to urge the question of constitutionality upon the ground stated. *Verhelst Construction Co. v. Galles,* 204 Wis. 96, 101, 235 N. W. 556; *Booth Fisheries Co. v. Industrial Comm.* 185 Wis. 127, 200 N. W. 775. Moreover, the unconstitutionality of this section, if it is unconstitutional, would not affect the constitutionality of the statute as a whole or other provisions of the law not directly connected with the section. This is evidenced by sec. 189.24, Stats. 1933, which expressly so provides. This section was enacted in 1933, but it expresses the legislative understanding that has existed ever since the enactment of the Blue Sky Law. Independent of the legislative declaration, the provision cited would not affect the constitutionality of the law as a whole or other unrelated provisions of it, because it is not of such nature that it can be said that the law would not have been enacted but for its presence in the law. The provision relied upon did not operate as an inducement to the enactment of the law or of the provisions of it under which the defendant

was convicted. 5 Callaghan's Wis. Dig. pp. 4858, 4859. *State v. Terwilliger,* 141 Or. 372, 11 Pac. (2d) 552, 16 Pac. (2d) 651, expressly holds that a like provision, if unconstitutional, does not affect other provisions of the Oregon Blue Sky Law. While we do not pass upon the constitutionality of the section of the 1929 statutes, it may be said that the defendant's contention respecting it is based upon a decision of a trial court in Indiana and of a district appellate court in California. The California case is *People v. Pace,* 73 Cal. App. 548, 238 Pac. 1089, wherein it was held that a section of the California law similar in its terms was unconstitutional as applied to a broker who purchased sixteen items of stock and sold some of them after the permit for sale of the stock had been revoked. This decision was held in *Barnhill v. Young* (D. C.), 46 Fed. (2d) 804, to be limited to the case of a person selling his own stock, and not to render the California act invalid as a whole or as to unrelated provisions of it. Provisions identical in language or meaning with the section have been held valid in *State v. Swenson,* 172 Minn. 277, 215 N. W. 177; *State v. Soeder,* 216 Iowa, 815, 249 N. W. 412; *Kneeland v. Emerton,* 280 Mass. 371, 183 N. E. 155; *Commonwealth v. National City Co.* 280 Mass. 439, 183 N. E. 165; *Hall v. Geiger-Jones Co.* 242 U. S. 539, 37 Sup. Ct. 217; *Merrick v. N. W. Halsey & Co.* 242 U. S. 568, 37 Sup. Ct. 227. It may be also noted that the Blue Sky Law has been upheld by several of our own decisions, although the ground here laid was not presented therein. *Kreutzer v. Westfahl,* 187 Wis. 463, 204 N. W. 595; *State ex rel. Central S. H. & P. Co. v. Gettle,* 196 Wis. 1, 220 N. W. 201.

(6) Two complaints are made respecting the trial court's instructions relating to intent. It is claimed that the court committed prejudicial error, (a) in stating to the jury in connection with the embezzlement charges that "wrongful acts, knowingly or intentionally committed, cannot be justi-

fied on the ground of innocent intent;" and (b) in stating in connection with the Blue Sky Law counts that intent is not a necessary element of the offenses charged.

(a) The court's charge in connection with the embezzlement counts was very full upon the proposition of intent. The excerpt above quoted is taken from the midst of the charge upon that subject. Detached from its context and standing alone its import is entirely different from its import in the connection in which it was used. The jury were told that the evidence must satisfy the jury beyond a reasonable doubt that the defendant converted the moneys involved, and "that this was done with a fraudulent intent to appropriate the moneys" to his own use or the use of the Boyd Company, "and [with fraudulent intent] to deprive the Beecroft Building Company of the use of the same." The court then went on to say that when one deliberately and intentionally fraudulently converts funds of which he is the custodian to his own use, the offense of embezzlement is complete when the conversion takes place, and the fact that he expected to restore the money is immaterial; that persons intending to commit crime naturally consider and adopt means of concealment, and that acts of concealment or absence of them should be considered in deciding the question of criminal intent; that the law presumes a person intends the natural and probable consequences of his own acts. Then followed the words above quoted. These were followed by the statement that the intent with which a criminal act is committed is not proclaimed, and ordinarily there is no direct evidence from which the jury may be satisfied from declarations of the accused as to what he intended when he committed an act; and that "this question of intent, like all the other questions of fact, is solely for the jury to determine from the evidence in this case." We do not consider that the instruction as a whole can be considered erroneous or prejudicial. Taking the meaning of the word "wrongful" in the excerpt quoted as "unlawful," the clause expresses the idea of a statement

of this court in the embezzlement case of *Glasheen v. State,* 188 Wis. 268, 205 N. W. 820, that "when the act is, in itself, unlawful, the criminal intent is presumed from the intentional commission of the act." In such a situation one cannot be heard to say that his intent was innocent. In other words, as stated in effect by the trial court, acts intentionally committed under circumstances such as to constitute a crime are not justified by a claim of innocent intent.

(b) The trial court stated in connection with the Blue Sky Law counts that the question of intent did not enter into them. It is claimed that this instruction was erroneous particularly because of inclusion of par. (h) of sec. 189.23 (2), Stats. 1929, of the clause "who, in any other respect, wilfully violates or fails to comply with any of the provisions of this chapter." It was recently stated by this court in *Hobbins v. State,* 214 Wis. 496, 505, 253 N. W. 570, that "if one knowingly commits an act prohibited by a criminal statute he necessarily commits that act wilfully. He is not exempted from criminal responsibility because he considered the prohibition not wrongful. The legislature, in enacting the statute, determined the quality of the act in that respect." So here, as the defendant knowingly committed the acts charged as violations of the sections of the Blue Sky Law involved, his acts were done wilfully, and the intent he entertained when he committed the acts, other than an intent not to commit them, cannot excuse his violation of the statute. Where the legislature has prohibited, under a penalty, the doing of a specific act, "the doing of the inhibited act constitutes the crime, and . . . the only fact to be determined in these cases is whether the defendant did the act." 8 R. C. L. p. 62; 16 C. J. pp. 76, 77; *Horning v. District of Columbia,* 254 U. S. 135, 41 Sup. Ct. 53; *Shevlin-Carpenter Co. v. Minnesota,* 218 U. S. 57, 30 Sup. Ct. 663; *U. S. v. Balint,* 258 U. S. 250, 42 Sup. Ct. 301.

*By the Court.*—The judgment and sentences of the circuit court are affirmed.