Argued October 28, 1957, affirmed June 4, 1958

## FIELDS *v.* FIELDS

307 P. 2d 528
326 P. 2d 451

Dick & Dick, of The Dalles, for the motion.

Charles A. Phipps, The Dalles, and Phillips & Sandberg, Portland, contra.

BRAND, J.

The plaintiff brought an action for damages on account of personal injury suffered as a result of the alleged negligence of the defendant. The jury returned a verdict for plaintiff in the total amount of $38,227.47. Defendant appealed and the case is now before us upon a motion by the plaintiff to strike the bill of exceptions. We take it that a motion to strike, when filed in this court, means "to strike" from a transcript which is on file here. The motion to strike the bill of exceptions was filed on 24 January 1957 but the bill of exceptions was not filed with the clerk of this court until 6 February 1957. The motion was therefore premature. However, since the plaintiff could immediately re-file his motion to strike, we will consider the merits of his motion as if it was filed after the filing of the bill of exceptions. The cause was tried in the circuit court for Sherman County. Judgment for the plaintiff upon the verdict of the jury was

signed on 13 November 1956 and entered on 15 November 1956.

From the affidavit of an attorney for the defendant-appellant it appears that a proposed bill of exceptions was mailed to John Liveira, clerk of the circuit court at Canyon City which is in Grant County, "with the request that he mark it submitted and then deliver it to the Honorable E. H. Howell, Circuit Judge for the Eleventh Judicial District;". John Liveira, as clerk of the circuit court for Grant County (which is not the county in which the case was tried) certifies that he received the proposed bill of exceptions on 2 January 1957 "with a request that I mark it 'submitted' and deliver it to Judge E. H. Howell for his consideration." He further certified "That on the 2nd day of January, 1957, I did deliver to Judge Howell the said Bill of Exceptions at the Courthouse in Canyon City, Oregon, but I did not mark it 'submitted', for the reason that I am not the Clerk of Sherman County, Oregon." The transcript of testimony certified by the court reporter was not physically attached to the short bill of exceptions but was certified, incorporated by reference and settled as a part of the bill by order of the trial judge signed on 15 January 1957. The bill bears the indorsement of the clerk of Sherman County, as follows:

> "Bill of Exceptions tendered January 15, 1957
> "Bill of Exceptions filed January 16, 1957
> "Marie Hoskinson, County Clerk".

The authenticated and settled but unattached transcript of testimony also bears the indorsement:

> "Filed Jan. 16, 1957
> "Marie Hoskinson
> "County Clerk".

To summarize, the relevant events in chronological order were as follows:

15 November 1956—Entry of judgment for the plaintiff.

2 January 1957—Proposed bill of exceptions received by the clerk of Grant County.

2 January 1957—Proposed bill delivered to Judge Howell.

14 January 1957—60th day after entry of judgment.

15 January 1957—Bill of exceptions settled by order of Judge Howell.

16 January 1957—Bill of exceptions filed with the clerk of Sherman County.

The statute provides:

"A proposed bill of exceptions may be tendered by presenting it to the clerk of the court within 60 days after the entry of the judgment, or within such further time as may be granted by order of the court if application is made during the said period of 60 days or within any extension that may be granted." ORS 19.100.

The clear legislative intent as expressed in the statute is that the clerk of the court to whom the proposed bill of exceptions may be "presented" is the clerk of the court which tried the case. This case was tried in Sherman County and we find no authority for presenting the bill to the clerk of the circuit court for Grant County. Any other construction would mean that a bill could be tendered to the trial court by presenting it to any one of several county clerks, with the result that the records and files of the trial court would be incomplete. We conclude that the presentation of the bill to the clerk of the circuit court for Grant County did not constitute a tender thereof to the judge within

the meaning of ORS 19.100. The tender to the clerk of the Sherman County circuit court was one day late, no extension of time having been requested or given. *Rayburn v. Norton,* 150 Or 140, 36 P2d 986, 43 P2d 919. We have repeatedly held that a proposed bill of exceptions must be tendered within the time specified in ORS 19.100.

> "It is clear from a reading of the provisions of section 2-703, as amended, that it was the intention of the statute to limit the right to prepare and tender a proposed bill of exceptions to a period of sixty days after the entry of the judgment or within such further time as may be granted by the trial court, providing that the order granting such extension is made during the time when the right to file the bill exists and that an order made extending the time after the right to file the bill had ceased to exist would be unauthorized and void." *State v. Stapleton,* 139 Or 402, 405, 10 P2d 600.

See also *State v. Terwilliger,* 141 Or 372, 11 P2d 552, 16 P2d 651; *Hart v. State Ind. Acc. Comm.,* 148 Or 692, 38 P2d 698; *Bird v. Ellingsworth,* 156 Or 103, 59 P2d 261, 65 P2d 674; *Williams v. Ragan,* 174 Or 328, 143 P2d 209.

The opinion in *State v. Stapleton,* supra, 139 Or 402, 10 P2d 600, was cited with apparent approval in *State v. Terwilliger,* supra. Insofar as those cases hold that the *application* for extension of time must be made during the period of 60 days or within any extension that may be granted, they are in harmony with the statute and correctly state the law. Insofar as they intimate that the *order* extending time as well as the application therefor must be made within 60 days or within any extension that may be granted, they were overruled by *State ex rel. v. Leonard,* 164 Or 579, 94 P2d 1113, 102 P2d 197.

In *Bird v. Ellingsworth,* supra, the court said of *Hart v. State Industrial Accident Commission,* supra, 148 Or 692, 38 P2d 698:

"* * * It was therein held that it was mandatory that the application and *order* for extension of time be made before the applicant is in default. * * *" (Italics ours.)

The Hart case did not so hold. See 148 Or at 700. If the Bird case be construed as holding that the order extending time must be made within the time specified, then it too must be deemed overruled insofar as it conflicts with the later ruling in *State ex rel. v. Leonard,* supra. The opinion in the Hart case was written by Justice BAILEY who was also the author of *State ex rel. v. Leonard.* There is no conflict between the two.

From the foregoing it will be seen that if the exclusive procedure for tendering a bill of exceptions to the trial judge is by "presenting" it to the clerk of the court" within the time prescribed, then the bill of exceptions in this case must be stricken. It is suggested, however, that there remains from the recognized earlier procedure the right to tender a bill of exceptions direct to the trial judge. In this case the clerk of the Grant County circuit court at the request of appellant did deliver the bill to Judge Howell on 2 January 1957, long before the 60 days had expired.

Prior to 1929 the statutes imposed no limitation upon the time within which the circuit court could settle a bill of exceptions, the matter being within the court's discretion (*State v. Terwilliger,* supra), and the statute made no provision for tendering a bill of exceptions by "presenting" it to the clerk of the court. Under the early practice there was no statute which would prevent the appellant from tendering the proposed bill directly to the trial judge without "present-

ing" it to the clerk. The decisions indicate that the practice was to present or tender the bill directly to the trial judge. *Hayes v. Clifford*, 42 Or 568, 72 P 1, was a case in which the plaintiff brought mandamus against the trial judge to compel him to sign a bill of exceptions. The attorney for the appellant in the criminal case "Presented said bill of exceptions to the defendant" (the judge), who refused to sign it. This court quoted from *Ah Lep v. Gong Choy*, 13 Or 205, where it was said, "The bill of exceptions should be tendered to the judge * * *." It was held that there was no abuse of discretion by the trial court in refusing to settle the bill belatedly tendered, but no question was raised as to the propriety of tendering it direct to the judge.

Other cases decided before 1929 tend to indicate that the practice was to tender or present the proposed bill of exceptions to the judge. *Washburn v. Interstate Investment Co.*, 26 Or 436, 36 P 533, 38 P 620 (1894); *Boothe v. Farmers & Traders Nat. Bank*, 53 Or 576, 98 P 509, 101 P 390 (1909); *National Council v. McGinn*, 70 Or 457, 138 P 493 (1914).

*State v. Stapleton*, supra, a mandamus case, was decided under the statute as it now appears in ORS 19.100. See Oregon Laws 1931, ch 49, p 54. In that case the plaintiff "before filing said transcript tendered it to defendant [the judge] and requested him to settle, sign and certify to the same as a bill of exceptions." The petition for the writ of mandamus states that the defendant and appellant "requested said James P. Stapleton as judge * * * to settle and allow said transcript as a bill of exceptions", but that at that time Mr. Ralph H. King was present and objected. This was done two days before the proposed bill was filed with the clerk. This court held that the

provisions of the statute as to time were mandatory and the bill was presented too late, but it was not even suggested that it was improper to make the tender direct to the circuit judge.

We now return to ORS 19.100. It will be observed that the statute provides that a proposed bill *may* be tendered by presenting it to the clerk of the court within 60 days, etc. There was obviously a double purpose in enacting the statute. (1) It was intended to limit the time within which any bill might be tendered. The cases cited supra have committed this court to the rule that any tender must be made within 60 days, or within such further time as is granted under ORS 19.100, and (2) the statute was enacted for the convenience of appellants, to eliminate the necessity of seeking out the trial judge who might be presiding in another county of his judicial district, or perchance be on vacation, and to authorize a tender to the judge by means of "presenting" the proposed bill to the clerk of the court where the case was tried. The clerk then accepts the tender on behalf of the judge by marking it "tendered" or "filed". After the bill has been tendered, it is immaterial that the order settling the bill is made after the 60 days or extension thereof has expired.

■ In view of the practice existing before the passage of the act which authorizes a "tender" by "presenting" the proposed bill to the clerk, we have concluded that when the statute says a proposed bill *may* be tendered by presenting it to the clerk, it recognized that an alternative procedure existed and that *may* was permissive and not mandatory. "May" did not mean "must".

The decisions have positively established the construction that in any event any tender, however, made,

must be made within the time specified in the statute. As thus construed, the statute, by a slight transposition of phrases, now means, *A proposed bill of exceptions may be tendered within 60 days * * * by presenting it to the clerk * * *.* We think such construction conforms to the legislative intent. It would be a strange rule, smacking more of technicality than of substance, if we were to hold that a valid tender may be made to a clerk *for the judge* but cannot be made *to the judge himself.* Such a construction, not being clearly required by the statute, should be rejected.

One problem only remains. We have found no decision of this court which appears to be inconsistent with the proposed construction of the statute. We must, however, consider the language employed in the leading case of *Williams v. Ragan,* supra. In that case there is no indication that any tender of a proposed bill of exceptions was ever made to the judge personally. It was a plain case of a failure to present the bill of exceptions to the clerk within the 60-day period, no extension of time having been granted. This court said:

"It is now settled by the decisions of this court that the foregoing requirement is mandatory, and the circuit court has no power to settle a bill of exceptions which is not presented to the clerk of the court within the time specified in the statute. * * *" *Williams v. Ragan,* 174 Or 328, 330, 143 P2d 209.

We agree that the provision of the statute as to the time for tendering a bill of exceptions is mandatory. We also agree that the decision was correct and the statement of the court was accurate as applied to the facts of that case. But the court had no reason, in that case to consider whether a tender direct to the

trial judge within the time limited would suffice, for no such tender had been made. The language used should be read in the light of the facts under consideration, and we hold that the quoted portion of the opinion in the Ragan case should be limited to the facts of that case. It would mean that ''the circuit court has no power to settle a bill of exceptions which is not presented to the clerk of the court within the time specified in the statute'' *when the tender is made by such presentation to the clerk.*

In holding that a bill of exceptions may be tendered directly to the judge within the time limited by statute we do not approve of such procedure. A tender to the judge by presenting the bill to the clerk makes possible an official record of the time within which the tender was made, whereas a tender to the judge may leave the matter of the date of the tender open to controversy unless the court actually settles the bill of exceptions within the time allowed for tender. It would approach the ridiculous to hold that a bill tendered and actually settled by order of the judge within the required time was subject to be stricken merely because not presented to the clerk. We may add that any danger of controversy as to the time of tender to the judge may be eliminated if counsel for appellant sees to it that the judge on receipt of the bill indorses thereon the date of tender.

The motion to strike the bill of exceptions is denied.

*Wm. C. Ralston* and *W. K. Phillips*, Portland, argued the cause for appellant. On the brief were Phillips & Sandeberg and Wm. C. Ralston, Portland.

*Edgar M. Dick*, The Dalles, argued the cause for respondent. On the brief were Dick & Dick, The Dalles.

Before PERRY, Chief Justice, and ROSSMAN, BRAND, WARNER, McALLISTER and KESTER*, Justices.

McALLISTER, J.

The plaintiff, Leonard Fields, brought this action against his father, Tracy L. Fields, to recover damages for personal injuries sustained while working on his father's ranch. The jury returned a verdict for plaintiff and from the judgment based thereon, defendant appeals.

The defendant contends that the court erred in allowing recovery of loss of earnings as special damages, in denying defendant's motion for directed verdict and in instructing the jury that a failure of the defendant to comply with certain provisions of the basic safety code would constitute negligence per se.

The accident occurred on December 31, 1953, on defendant's wheat ranch in Sherman county. Leonard, a mature young man with a family of his own, also owned a wheat ranch in the same neighborhood. Leonard occasionally worked on his father's ranch and at the time of his injury was engaged in spraying wheat. The spraying was done with a mobile Hardy spray rig owned by the father and pulled by a tractor owned by Leonard.

---

* Resigned March 1, 1958.

Originally the pump of the spray rig had been powered by a motor installed in the rig as a component part thereof. A year or so prior to the accident the defendant had purchased and installed on the sprayer a device known as a "power take-off" so that the sprayer could be operated by power transmitted from the tractor pulling the rig. The power was transmitted by a drive shaft extending from the rear of the tractor to the front of the spray rig and connected to each machine by a universal joint.

The drive shaft of the spray rig extended a short distance from the front end of the rig and a universal joint was attached to the end of this shaft and kept in place by a set screw or bolt. This bolt was not flush with the shaft but stuck out an inch or two and caused plaintiff's injury.

Plaintiff had been spraying on his father's ranch with this equipment for a day or two before his injury. Because of the cold weather, it was necessary to open numerous valves and completely drain the spray rig each night. Plaintiff was injured early in the morning as he and a ranch hand employed by defendant were getting the equipment ready to start the day's work. It was necessary to close the valves on the spray rig, pour about five gallons of water or spray material into the machine and arrange the hoses on the spray boom. Leonard started the motor of the tractor and believing that the valves were all closed, engaged the power take-off which started the pump on the spray rig. As he stepped out of the tractor and back toward the spray rig, Leonard saw water squirting from a valve situated on the front of the spray rig very close to the drive shaft extending from the front of the machine. He stepped onto the rig and reached over the drive shaft to close the valve. The bolt projecting

from the revolving drive shaft caught the sleeve of his jacket, flipped him over on his back, broke and severely mangled his arm. The drive shaft snapped in two thus probably saving him from further injury.

By his second amended complaint plaintiff sought recovery upon the dual theory that his employer had been guilty of common law negligence and violation of certain duties imposed by statute. To bring his case within the scope of the Employer's Liability Act, plaintiff alleged that the work involved risk or danger, and that the defendant was negligent in permitting the bolt to project from the shaft, in failing to guard the shaft and universal joint and in failing to use every device, care and precaution practicable to use for the safety of life and limb. ORS 654.305[1]. Plaintiff further alleged that defendant had failed to comply with certain provisions of the basic safety code adopted by the State Industrial Accident Commission pursuant to ORS 654.005 to 654.100, which required that all projecting set screws in revolving parts be removed or made flush and that all mechanical power transmission apparatus be guarded.

Defendant denied the charges of negligence and charged plaintiff with contributory negligence in failing to guard the universal joint himself, in attempting to turn off the valve without first shutting off the power, in attempting to shut off the valve by reaching over the revolving drive shaft and in other particulars.

In his complaint plaintiff alleged that he had been required to hire extra help to perform work on his ranch which he ordinarily would have done himself,

---

[1] ORS 654.305. Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices.

to plaintiff's special damage in the sum of $5,115. The jury awarded general damages in the sum of $30,000, special damages for hospital and medical expenses in the sum of $3,112.47 and special damages for loss of earnings in the amount demanded of $5,115. Defendant objected to the evidence and instructions with regard to loss of earnings on the ground that such loss was "not a proper element of damages" and that "there is no showing they were reasonable charges for the service rendered." Neither objection is well taken.

As pointed out in *Shaw v. Pacific Supply Coop.*, 166 Or 508, 113 P2d 627, there is a well defined difference between impaired earning capacity and loss of earnings. Impaired earning capacity is a direct and natural consequence of a disabling injury of a permanent or lasting nature, is an element of general damages and need not be specially pleaded. On the other hand, loss of earnings generally looks to the past, is an element of special damages, must be specially pleaded and ordinarily may be ascertained with reasonable certainty.

It would be improper to permit recovery for loss of earnings and for impaired earning capacity covering the same period of time. See *Moe v. Alsop*, 189 Or 59, 216 P2d 686. Loss of earnings ordinarily compensates for loss sustained during the period from the injury to the commencement or trial of the action. If recovery is sought for both loss of earnings and impaired earning capacity, then the latter should be assessed prospectively from the time of trial. See McCormick on Damages (Hornbook edition) § 86 et seq., p. 299.

In the case of a person who is self-employed in the operation of a small enterprise or farm, evidence of the cost to hire help to do work which normally would

be done by the injured person himself is admissible to prove loss of earnings, provided the reasonableness and the necessity of the expenditure are shown. See *Bascom v. Hoffman*, 199 Ia 941, 203 NW 273 and *Sexton v. Lauman*, 244 Ia 570, 57 NW2d 200, 37 ALR2d 353 and cases annotated in 37 ALR2d 364.

■ In the case at bar plaintiff testified that because of his injuries he was required to expend $5,115 to hire work done on his ranch which he otherwise would have done himself and that the amount expended was "the market value" of the labor hired. The evidence on this phase of the case was sufficient to support the verdict. We find no merit in this assignment of error.

■ Defendant also assigns as error the denial of his motion for a directed verdict. We deem it unnecessary to extend this opinion with a detailed discussion of the evidence. We have examined the record carefully and are satisfied that there was substantial competent evidence to support the verdict of the jury. This evidence tended to prove that Leonard was employed by his father, that the work involved risk or danger, that Leonard was injured by the bolt projecting from the drive shaft and that the injury was the proximate result of the negligence of defendant in failing to either make the bolt flush with the drive shaft or to guard the shaft and universal joint. The evidence established that after the accident the father guarded the bolt with a heavy covering of tape and that later, after he had purchased the machine from his father, Leonard installed a metal guard over the universal joint. Neither of these protective measures impaired the efficiency of the machine. This evidence was admissible to show the practicality of guarding the shaft and universal joint without impairing the efficiency of the machine. See *Franklin v. Webber*, 93 Or 151,

182 P 819; *Baldassarre v. West Oregon Lbr. Co.*, 193 Or 556, 571, 239 P2d 839; *Williams et al. v. Portland Gen. Elec.*, 195 Or 597, 247 P2d 494.

■ Defendant contends that if the employer's liability act applied, plaintiff was a person in charge of the work, and as such had a duty himself to place a guard over the universal joint or otherwise render the machine safe. ORS 654.315[2]. It is clear that the spray rig belonged to the defendant and that the power take-off unit was purchased and installed by him. There is no evidence tending to prove that plaintiff owed his father any duty to inspect the spray rig and to make certain that it complied with the employer's liability act. Leonard was not employed for that purpose nor was there any evidence that he had been assigned any such duty. He was hired to use the spray rig in spraying his father's wheat. It is true that Leonard had previously used the rig to spray his own wheat. His familiarity with the machine resulting from such prior use may have been relevant on the issue of contributory negligence but did not transfer to him the duty imposed by statute on his father to make the machine as safe as practicable. For cases considering the duty of a person having charge of the particular work to see that the employer's liability act is complied with, see *Marks v. Bauers*, 3 F2d 516 (certiorari denied 268 US 704, 45 S Ct 639, 69 L Ed 1167); *Schmidt v. Multnomah Opr. Co.*, 155 Or 53, 61 P2d 95; *Straub v. Oregon Electric Ry. Co.*, 163 Or 93, 94 P2d 681; *Robbins v. Irwin et al.*, 180 Or 667, 178 P2d 935.

■ There was considerable evidence to support defendant's claim of contributory negligence. The jury was properly instructed that plaintiff's contributory

---

[2] ORS 654.315. The owners, contractors, subcontractors, foremen, architects or other persons having charge of the particular work, shall see that the requirements of ORS 654.305 to 654.335 are complied with.

negligence, if proved, would require a verdict for the defendant if the common law applied or should be considered in mitigation of damages if the jury found that the work involved risk or danger and applied the employer's liability act. No error is assigned with regard to these instructions.

Defendant, by his last assignment of error, contends that the court erred in instructing the jury that a violation of a portion of the basic safety code would constitute negligence per se. This assignment does not comply with our rules in that the objection made to the instruction is not set out haec verba in the brief. See Rule 16. An examination of the bill of exceptions is not enlightening in that it contains only a general objection in this language:

"[Mr. Phillips] And I take exception specifically to Your Honor's submitting to the jury the Safety Code. We have also gone over that theory, and I think the Court is fully aware of the positions of the parties.

"THE COURT: Yes. Counsel may have their exceptions."

We are not informed of any specific objection that may have been made by defendant's counsel to any particular language of the safety code during any unreported discussion with the court. The general objection to "submitting to the jury the safety code" is not well taken. The safety act and the code promulgated thereunder apply to every employer. See *Hillman v. Northern Wasco County People's Utility District*, 213 Or 264, 323 P2d 664. They apply to employment involving risk or danger to which the employer's liability act also applies. See *Baldassarre v. West Oregon Lbr. Co.*, supra; *Shelton v. Paris*, 199 Or 365, 261 P2d 856; and *Arnold v. Gardiner Hill Timber Co.*, 199 Or 517,

263 P2d 403. In every case in which one relies for recovery on the violation of a duty imposed by statute he must allege facts which will bring the case within the terms of the statute. See *Nichols v. Union Pacific R.R. Co.*, 196 Or 488, 503, 250 P2d 379; *Arnold v. Gardiner Hill Timber Co.*, supra; and *Burke v. Olson*, 206 Or 149, 291 P2d 759.

■ Although some of the provisions of the safety code quoted in the instruction were of general nature and might well have been eliminated, other portions dealing with projecting keys, set screws and other projections in revolving parts were particularly applicable. The general language may have been abstract and might have been eliminated if the attention of the court had been called thereto but, in any event, was not prejudicial.

Finding no error the judgment is affirmed.