HOWARD K. FIELDING *vs.* THEODORE ·KAPLAN.
ROGER BLANCHETTE *vs.* SAME.

FEBRUARY 28, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J.   These actions of trespass on the case for negligence were tried together to a jury in the superior court and resulted in a verdict in favor of the plaintiff Howard K. Fielding for $695, and in a verdict for the plaintiff Roger Blanchette for $170. Nevertheless, principally on the ground that the damages were inadequate, each plaintiff moved for a new trial, which was denied by the trial justice. Each plaintiff duly excepted to such denial and has prosecuted a bill of exceptions to this court.

These cases arose out of a collision between a motor truck driven by Fielding, in which Blanchette was riding, and an automobile operated by defendant. The collision occurred about noon on May 7, 1943, at or near the intersection of Roosevelt avenue and Exchange street in the city of Pawtucket, in this state. Defendant drove his automobile into the rear of the truck while it was stopped, on Roosevelt avenue, by an automatic red traffic signal light at the intersection. The collision caused only slight damage to the motor vehicles, that is, a dent in a rear fender of the truck and crumpling of defendant's radiator grille against the fan. To avoid further damage to defendant's automobile it was not operated under its own power as the grille was in contact with the fan. After the accident it was pushed to the curb and later towed away. As to whether the collision caused personal injury to anyone, there was a conflict in the testimony.

Defendant testified that, after the collision, Fielding and Blanchette stepped out of the truck, walked back to his automobile and assisted him in trying to separate the radiator grille from the fan; and that when their efforts proved unsuccessful they helped him push the automobile to the

curb out of the way of traffic. He also testified that he asked each of them if anybody was hurt and each answered, "No".

Each plaintiff denied making such a statement. They also denied that they had helped defendant push his automobile to the curb. Fielding testified that he went to the rear of the truck after the collision and talked to Kaplan and told him: "I wanted to get to the doctor with my head." He claimed that when the collision occurred his head had bumped against shelving in the truck in back of the driver's seat. Kaplan testified, however, that Fielding had said when he was leaving that he had to continue his business calls and could not stay any longer, and that he, Fielding, then drove away in the truck. Fielding admitted that there was no mark on his head and the doctor to whom he went later in the day testified that he examined Fielding's head and found no mark there and no indication of an injury. An X ray of his head showed no bone injury. The doctor nevertheless gave Fielding treatment on his statement that he had headaches, dizziness and nausea. From what Fielding told him the doctor testified that he thought at first Fielding had concussion of the brain, but that he was later of the opinion that it was contusion of the brain, which, he testified, was an advanced form of concussion of the brain.

Blanchette testified that the collision had jarred him off the seat on which he was sitting and that he had suffered injuries thereby to his right shoulder and arm. The same doctor who attended Fielding also attended Blanchette and testified that he had advised Blanchette to get a brace. He also testified that, according to what Blanchette told him he was suffering from, he gave him diathermic treatments for pains in the shoulder and arm. In other words, as far as the doctor knew, Blanchette's shoulder and arm injuries were not indicated by any objective symptoms but only by subjective symptoms upon which he, the doctor, was forced to rely entirely.

Blanchette was discharged by his employer a few days following the accident and remained out of employment

about ten weeks. He claims his loss of employment was due to the injury which he suffered in the accident. His employer's manager, however, testified that he was discharged because he was "a fresh employee, arrogant."

Fielding did not work from May 8 to August 2, 1943. During part of that period, until July 10, 1943, his employer paid him his wages but after that date they were stopped. He went back to work on August 2, 1943 and worked continuously until December 31, 1943 when he gave up his employment. A little over three weeks later he went to work for an insurance company. He claims that he had to give up his work with his former employer because of his headaches, which he testified stll continued through that period. However, he also testified that the job with the insurance company required much shorter hours of work, was more desirable in other ways than his former employment, and that in doing it he was more or less his own boss.

It appeared from the evidence that before the collision Fielding was wearing glasses which he had obtained from an optometrist, about five or six months previously, apparently without a prescription by an oculist. After the collision, while he was in the hospital, the doctor had an oculist examine his eyes and he prescribed new glasses. There was no evidence that the oculist discovered any defect in Fielding's eyes other than impaired vision. Neither the oculist nor the optometrist was called by the plaintiff to testify in the trial of these cases. The doctor testified, on cross-examination, that wrongfully fitted glasses could cause severe headaches, and he admitted that he based his diagnosis of Fielding's head condition entirely upon what Fielding had told him. He made a like admission as to Blanchette's condition and he testified that he treated both men accordingly.

If the plaintiffs were actually injured in the collision and to the extent that they claim, and if their loss of employment was due thereto, then each of them would certainly be entitled to much larger damages than the jury awarded. However, the jury were not bound to give complete credence

to their testimony. Apparently they did believe that plaintiffs received some injuries but not to the degree that they claimed. From our examination of the transcript we are of the opinion that the jury could reasonably have found that each plaintiff suffered personal injury, though slight; that each required some medical attention, though not to the extent which he claimed; and that neither plaintiff's claim of loss of wages was due to the collision, or at least as to Fielding it was due only in part thereto, and as to Blanchette not at all. Such findings could well have been based upon the degree of credence which the jury placed in the testimony of each plaintiff. It was clearly within the province of the jury to consider such testimony in the light of each plaintiff's credibility and to give that testimony such weight as they felt it truly merited.

The trial justice who, like the jury, had an opportunity to see and hear the plaintiffs as they testified, has evidently agreed with the jury in their conclusions; at least he has not found, in the exercise of his more experienced judgment, that their verdicts fail to do substantial justice between the parties. Under our well-established rule his decisions should not be disturbed unless they are clearly wrong.

We have carefully read the evidence and considered it in connection with the credibility of the witnesses and we cannot find any ground that would warrant us in deciding that the trial justice had clearly erred in approving the jury's verdicts. When the evidence of plaintiffs' injuries and resulting damages are viewed as a whole and weighed in the light of those facts which might, to some reasonable minds, cast a doubt on plaintiffs' credibility, there appears to be good ground for treating the sum which the jury awarded to each plaintiff as reasonable compensation for the loss sustained by each. That other reasonable minds might conceivably have awarded each plaintiff a larger sum does not affect adversely the soundness of the jury's verdicts as a matter of law, and the trial justice did not err in refusing to set aside such verdicts. The plaintiff's exception in each case

to the denial of his motion for a new trial is therefore overruled.

Plaintiffs have prosecuted four other exceptions to rulings of the trial justice on the admission and exclusion of evidence during the trial. We shall not discuss those exceptions separately for the reason that, in our opinion, they are clearly without merit. The excluded evidence concerned wages which had been earned by others who had worked on the job that Blanchette was to, but did not, take over after the accident. Such wages consisted in part of commissions on sales in addition to a fixed weekly wage. That evidence was clearly irrelevant, as it would not tend to prove what Blanchette would have earned in total wages, including commissions; and it was also speculative as a basis for estimating his wages on a job at which he had never worked. The evidence which they desired to have stricken out related to the reason given by Blanchette's employer why Blanchette was discharged. This evidence was clearly admissible in view of Blanchette's testimony that he had to leave his work because of his injury.

While each plaintiff sets out the above exceptions in his bill of exceptions they actually apply only to Blanchette's case. In any event they are all without merit and are, therefore, overruled.

All of the plaintiff's exceptions in each case are overruled, and each case is remitted to the superior court for the entry of judgment on the verdict.

*McKiernan, McElroy & Going, Peter W. McKiernan, John C. Going,* for plaintiffs.

*William A. Gunning,* for defendant.