J. Irwin Shapiro, J.
Motion by plaintiffs, husband and wife, to set aside a verdict in their favor upon the ground that it is inadequate, and upon all the grounds specified under section 549 of the Civil Practice Act, except excessiveness.
The jury returned a verdict for the plaintiffs in the following language:
“ the foreman: Number 1, we have unanimously voted for the plaintiffs as against the defendant.
‘1 Number 2, we have voted in the sum of $13,500, by unanimous vote, for personal injury to Mrs. Metz.
‘ ‘ Number 3, we unanimously approved $625.00 for Mr. Metz.
‘ ‘ Number 4, a 10 to 2 vote against awarding any amount for future permanent position as teacher.
‘1 the court : In other words, as I understand it, the verdict of the jury is a verdict in favor of the plaintiff, Mrs. Metz, for $13,500, and a verdict in favor of Mr. Metz for $625.00.
“ the foreman: Yes, sir.”
The defendant’s counsel in answer to the court’s inquiry stated that he had no motions to make with respect to the verdict. As has been noted, plaintiffs’ counsel did move to set the verdict aside, but he made no request that the jury be sent back to reconsider its verdict by including therein some award for the plaintiff wife’s (hereinafter referred to as “ plaintiff”) deprivation of her right to become a permanent teacher in the New York City school system.
The plaintiff was injured when she was caused to fall in defendant’s store by reason of the condition of the floor therein — a condition of disrepair which was not disputed by the defendant.
In 1953 plaintiff had suffered some pain in the region of the right hip; she was laid up for about three weeks and X rays were taken of the hip area. From that time, 1953, down to February 20,1957, the date of the accident in this case, she was completely free of any pain in or in the region of the hip joint. The pain began almost immediately after the occurrence.
When she fell on defendant’s floor she sustained, among other things, contusions in the area of the right hip, and although she returned to her duties as a permanent substitute school teacher four days after the accident, the pain in the region of the right hip continued with increasing severity and shortly thereafter she developed a very marked limp.
*260 When this limp developed she came under the treatment of an orthopedist who was also her medical witness upon the trial. He determined that there had been so much destruction of the hip joint that an operation to fuse or weld the joint was necessary, but he told the plaintiff that the outcome of the operation was uncertain; that if it were successful it would relieve some of the pain, although leaving her with a stiff and immobile joint, and that if the operation were not successful, the pain would continue. The plaintiff refused to undergo that operation.
After treating and seeing the plaintiff for some time, the doctor changed his mind about the fusing operation and suggested that an osteotomy be performed — a procedure in which new bone taken from another part of the body is grafted on to the hip and in which there is a shifting of the grafted hip bone closer to the median line. Even if successful, this operation would not cure or eradicate the plaintiff’s limp, but it might control a further progression of the destruction of the hip bone and joint, and it might to some degree lessen the plaintiff’s pain.
The plaintiff’s orthopedist, having examined the X rays taken of the plaintiff in 1953, the X rays taken shortly after her injury in February, 1957, and the X rays taken by him personally, concluded that the plaintiff in 1953 had an arthritic condition of the hip which was entirely dormant but which by reason of her fall in defendant’s store had been reactivated and that it was the reactivation which was giving her the pain and causing her to limp and lurch when she walked.
The defendant’s orthopedist, having the benefit of an examination of the same X rays, although denying that the condition was caused by a reactivation of the dormant arthritis and contending that it was a natural progression of the old arthritis, with which the accident had nothing to do, stated that he was of the opinion that an arthroplastic operation was necessary — a procedure in which the entire hip joint is removed and is replaced by an artificial joint. He did not believe that there should be a fusing operation, as was originally suggested by plaintiff’s orthopedist, because in his opinion such an operation would cause an additional strain on the plaintiff’s back over and beyond that now caused to that area of the body by the plaintiff’s limp. He was of the opinion that such an operation would only further complicate the situation.
In this state of the record and without giving any monetary value to the damage sustained by the plaintiff through her inability to become a permanent teacher, a subject which will be discussed in more detail hereafter, the verdict of $13,500 awarded to plaintiff by the jury is utterly incomprehensible. *261 Giving to it every presumption to which a jury verdict is legitimately entitled and recognizing that mere disagreement with a verdict by the trial court is not the test as to whether it should be permitted to stand, the court finds itself unable to find any justification for the amount of the verdict in this case.
The jury were told that if they came to the conclusion that the plaintiff was entitled to a verdict then they would be confronted with the necessity of determining whether the plaintiff had merely sustained some contusions and abrasions, without any resulting consequences therefrom, which would only entitle her to a minor recovery, or whether there was in fact a reactivation and triggering of the dormant arthritis which caused her to become crippled, in which event, of course, she would be entitled to a substantial verdict. Dealing with what the jury should do if they found the injuries to be minor in character, the court said: “ Now, if you should come to the conclusion that the plaintiff is entitled to recover, that Mrs. Metz should have a verdict at your hands but that she didn’t sustain any substantial injuries, then, of course, we are not concerned at all in this case with mortality tables or whether she would become a permanent teacher or not, because then her right to recover would be relatively slight in amount.”
Since the verdict of $13,500 is not “ relatively slight in amount ”, it necessarily imports a finding that plaintiff’s present condition was caused by the accident. That being the case, it is so shockingly inadequate as to conclusively indicate that by no rational test can it be deemed fair and adequate.
There is yet another circumstance which makes the verdict in this case inadequate, and that is the refusal of the jury to award “ any amount for future permanent position as teacher.”
Between 1943 and 1958 the plaintiff was first a substitute and thereafter a permanent substitute in the New York City school system. In January, 1958 she applied for, and in February, 1958 took, the examination to become a permanent teacher. She passed all of the required tests for permanent appointment, but was rejected solely because of her physical condition — a condition which the jury’s verdict found was caused by the defendant. The court told the jury in its charge that it should consider as an item of damage the difference in the top grade of salary which a permanent substitute teacher could receive — $5,300 — which was then being received by the plaintiff, and the various increases which the plaintiff could and would have received as a permanent teacher in the school system, if, but for the defendant’s tortious conduct, she had not been deprived of the opportunity to become such a permanent teacher. While the jury was, *262 of course, not bound to give the plaintiff the full amount of the difference between the salary of a permanent substitute and a permanent teacher to the 70-year mandatory retirement age of a permanent teacher, and could have taken into consideration among other things the possibility of the plaintiff’s earlier demise it could not arbitrarily and without any justification in the record entirely refuse to make any reward for that legally compensable claim.
In Geary v. Metropolitan St. Ry. Co. (73 App. Div. 441) the court was dealing with the death of a member of the Fire Department who was then earning a salary of $1,400 a year. In ruling upon the right to show possible advancement in the city service, the court had this to say: “ The plaintiff was permitted to show, under the defendant’s objection and exception as irrelevant, immaterial and incompetent, the different grades of advancement above that of fireman of the first grade, which was the position occupied by the decedent, and the salaries of those positions to and including the chief of the department at a salary of $6,000 per annum. The decedent was thirty-two years of age, and he had been married six and a half years and left a widow twenty-five years of age and three children, the eldest being five. It appeared that he was a strong, healthy man. In the short time he had been connected with the department he had advanced four grades. Being in the department in these circumstances, it was reasonable to suppose that a young man of family and steady habits would remain, ancl the jury had a right to consider his prospect of advancement and the probability of his attaining a higher position and earning a greater salary. There is considerably more basis for these considerations and far less speculation involved than is sanctioned by the authorities which permit a jury to consider the possibility of a father or mother inheriting from a son, modified by the chances of his surviving them, or his becoming married and having a family to support and to inherit his property. (Johnson v. Long Island R. R. Co., 80 Hun, 306; Benson v. Corbin, 145 N. Y. 351; Birkett v. Knickerbocker Ice Co., 110 id. 504; Houghkirk v. President, etc., D. & H. C. Co., 92 id. 219) ” (pp. 443-444; italics ours).
While it is true that in that case the court held it to be error to show the specific salaries which the higher positions would commend because “ It would unduly emphasize the right of the jury to consider the question as to whether the decedent would likely ever earn a larger salary or receive greater compensation, and tend to make them regard as probable what is at most onlv *263 possible ’ the rationale there was that advancement ‘1 required that a civil service examination be passed ” and that “ Other qualifications than those essential to the position held by the decedent would be required to fill the advanced positions ” and that there was “ not sufficient probability that the decedent would have advanced to these positions to justify the reception of evidence showing the salaries ’ ’ and that therefore in such a ease “Evidence of specific salaries of higher positions would be misleading It is manifest that the reason for the exclusion from evidence of the wages which the decedent might have received had he lived, do not obtain here because in this case the plaintiff had, beyond any doubt, passed all of the requirements to become a permanent teacher, and would have, as a matter of law, been entitled to the increased increments flowing from such tenure.
In Grayson v. Irvmar Realty Corp. (7 A D 2d 436, 437) the court said, “ The principal issue raised in this personal injury negligence case is whether the court, in permitting the jury to award substantial damages to plaintiff for the impairment or frustration of her inchoate operatic career, committed error.”
The plaintiff there was a young woman who was engaged ‘ ‘ in the study of music looking to the development of an operatic career ’ ’. In holding that a jury had a right to consider future earning capacity, even though it was of an inchoate character, and not as in this case a certainty, the court said:
“ There is no dispute that one tortiously injured may not recover damages based upon the impairment of future earning capacity. There is also no dispute that the assessment of damages may be based upon future probabilities and is not confined to actual earnings prior to the accident. The unusual issue tendered in this case is whether there may be a similar assessment where the probability of future earnings is not based upon any prior actual engagement in the vocational earning of income. In that respect it is not unlike the situation in death actions where the pecuniary benefit to survivors must be determined with respect to children or very young people whose income potentiality has not yet been developed. The situation, on the other hand, is a little different, again, from that of young persons training for occupations, especially professions, where the probability of completion of training is high, and the resultant earning of at least a modal income is equally highly probable. The reason for this last difference is that in the case of persons of rare and special talents many are called but few are chosen. For those who are not chosen, the probabilities of exploiting *264 their talents financially are minimal or totally negative. In this class would fall the musical artist, the professional athlete, and the actor.
“It should be clear that one possessed of rare and special talents is entitled to recover damages for tortious injury to the development of those talents. This, too, may have a pecuniary value which is assessable, albeit without the degree of precision one would require in a commercial case. On this view, the .court properly submitted to the jury the question of assessing the damages to plaintiff’s operatic career, inchoate though it may have been.
* * *
“ The courts have also allowed juries to assess damages on future earning capacities based in turn upon probable promotions (Geary v. Metropolitan St. Ry. Co., 73 App. Div. 441; Briscoe v. United States, 65 F. 2d 404; Kalland v. City of Brainerd, 141 Minn. 119; contra Payne v. Lyon, 154 Ga. 501).
# * #
“ On this analysis the jury in this case was very properly permitted to assess the damages with respect to plaintiff’s inchoate operatic career” (pp. 437-439; italics ours).
It seems clear, therefore, that the refusal of the jury to give any consideration and to make any award for the plaintiff’s prospective loss of earnings was improper both under the existing state of the law and because it was in derogation of the court’s charge.
The jury most likely went astray on this aspect of the case because defendant’s trial counsel, in his summation, with great skill conveyed the impression to the jury that there was something sinister about the plaintiff’s application to become a permanent teacher, because it was only made after she had been injured in the instant accident. He contended that since she had been a substitute theretofore for 15 years such a post-accident application showed an avaricious desire for pecuniary gain at the expense of the defendant.
It may not be gainsaid, however, that, whatever her motives, plaintiff had a legal right to seek to change her position as a school teacher from that of a substitute with uncertain status, to that of a permanent teacher with tenure and all of the other increased emoluments and perquisites flowing therefrom. If the defendant, by its tortious conduct, prevented the exercise of that right, it is accountable in damages for any loss sustained thereby and it is no answer to say that the plaintiff had not theretofore exercised or availed herself of her rights.
*265 The court has, therefore, concluded that the verdict in this case may not stand. Instead of setting it aside outright, however, the motion will he granted unless the defendant within 10 days after the service upon it, of a copy of this memorandum, files and serves a stipulation agreeing to an increase of the verdict to $25,000 in the case of the plaintiff wife. If such stipulation be not served and filed within the time specified, an order is to be settled on notice setting the verdict aside as to both plaintiffs and providing for the placement of the case on the calendar of Trial Term, Part 1, for a day certain.