Argued February 8, reversed and remanded June 21, 1973

CONACHAN, *Respondent, v.* WILLIAMS,
*Appellant.*

511 P2d 392

*George M. Joseph,* Portland, argued the cause for appellant. With him on the briefs were Bemis, Breathouwer & Joseph, Portland.

*William H. Poole,* Portland, argued the cause for respondent. With him on the brief were Lindsay, Nahstoll, Hart, Duncan, Dafoe & Krause, Portland.

Before O'CONNELL, Chief Justice, and MCALLISTER, DENECKE, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action for damages for personal injuries arising out of an automobile accident. Defendant appeals from a judgment based upon a jury verdict for $9,500 in general damages and $950 in special damages for medical expenses.

The two primary issues raised by this appeal are: (1) was evidence of the amount of earnings alleged by plaintiff to have been lost between the time of his injury and the time of trial admissible as evidence of impairment of plaintiff's earning capacity, in support of his claim for general damages and, if so, (2) was the testimony offered by plaintiff for that purpose, based upon average earnings by other em-

ployees with similar contracts of employment, relevant and competent evidence to support such a claim of impairment of earning capacity?

The facts are important in considering these questions. Plaintiff was employed as a Division Manager by Prudential Insurance Co. His job involved recruitment, training and retention of life insurance agents. He was paid a minimal base salary, plus percentage "overrides" on those agents' commissions. These "overrides" were the major source of his income and depended upon the number of agents working under him and the amount of sales made by them.

For the purposes of this appeal defendant does not deny liability for the accident which caused plaintiff's injury. By the time of trial plaintiff had been discharged by his treating doctor and had made a normal recovery.

Plaintiff's original complaint made no claim for permanent injuries, but alleged special damages of $6,250 for lost income prior to trial, in addition to medical expenses. In addition to praying for judgment for these amounts as special damages, the complaint prayed for $25,000 in general damages.

The evidence in question on this appeal consisted of the testimony of the General Manager of Prudential's Portland agency to the effect that plaintiff was one of 15 or 16 Division Managers in the company's Pacific Northwest Region; that in 1969 (before plaintiff's injury), the average weekly income for this group was $219.33 and that plaintiff was rated third among this group, with income above that average, but that in 1970 (after plaintiff's injury), the average weekly income for that group increased to $343, while plaintiff's income was only $216.63, so that

he lost at least $125 per week in income during 1970 as a result of the accident. The General Manager also said that plaintiff had been highly regarded as having had "great potential" with the company and but for this injury would have "at least equalled" the weekly average income by other Division Managers; that before the accident he was known as "Mr. Hustle," but that he "slowed down" after the accident and at the time of trial was "right at the bottom" of the group.

When this witness started to testify to the average earnings of the 15 or 16 other Division Managers defendant objected to that testimony as irrelevant. After an offer of proof of this testimony in the absence of the jury defendant objected to comparing plaintiff's actual earning with the average earnings of other Division Managers upon the ground that such testimony was based on hearsay and speculation and that a claim of special damages for lost wages must be capable of accurate computation.

The trial court ruled that this testimony was "too speculative" to sustain plaintiff's claim of special damages, but that it had "substantive probative value" and was admissible in support of plaintiff's claim for general damages. Defendant then renewed her objections on the ground of relevancy, materiality and hearsay. She also objected that she did not have the "figures" used by the witness for use in cross-examination.

The trial court ruled, however, that although defendant could require the production of documents for use in cross-examination, plaintiff would be permitted to offer this testimony before the jury and that after defendant's counsel heard the testimony she could make her "formal objection."

That testimony was then repeated before the

jury. Defendant's attorney undertook to cross-examine the witness, who conceded that the income of the Division Managers depended upon the number and effectiveness of the agents under their supervision. Defendant's attorney then asked the witness to produce figures showing the number of agents working under each Division Manager in each office and the number of offices included in his computation of weekly average earnings, all for use in further cross-examination.

The trial then recessed over a week end. Upon resumption of the trial plaintiff's attorney reported that his witness had a list of the offices involved, but did not have the number of agents employed in each office. Defendant then moved to strike plaintiff's allegation of $6,250 for lost wages as special damages and also moved to strike the testimony as "too speculative" and as not supported by the information requested.

The trial court allowed defendant's motion to strike plaintiff's allegation of lost wages as special damages, but then inserted in the complaint as an allegation to support plaintiff's claim for general damages (after the allegations describing his injuries) the words *"and diminished his capacity to earn income,* all to his general damage in the sum of $25,000." The trial court also ruled that the cross-examination should continue, based on "what he's got."

1. *Impairment of pre-trial earning capacity may be claimed.*

Defendant's "summary" of argument on this issue is as follows:

"This Court has always recognized a distinction

between loss of earnings, which it has treated as a species of special damages suffered up to the time of trial, and impairment of earning capacity, which it has treated as an element of general damages relating to future ability to make a living. The trial court here obliterated the distinction entirely by admitting testimony on specific lost income and instructing the jury it could use that evidence to determine as part of general damages plaintiff's impaired earning capacity up to the time of trial. Maintenance of the distinction was particularly important here, because the plaintiff made no claim that his earning capacity *for the future* was in any way impaired by his injuries."

This court has held, in effect, that when in such a case a plaintiff was not employed at the time of his injury, so as to entitle him to make a claim for pre-trial lost wages as an item of special damages, he may not make a claim for pre-trial impairment of earning capacity as an item of special damages, so as to entitle him to an instruction on such an item as special damages. *Martin v. Hahn,* 252 Or 585, 590, 451 P2d 465 (1969). That holding was reaffirmed by a divided court in *Baxter v. Baker,* 253 Or 376, 379, 451 P2d 456, 454 P2d 855 (1969). See also *Shaw v. Pacific Supply Coop.,* 166 Or 508, 510, 113 P2d 627 (1941), and *Fields v. Fields,* 213 Or 522, 537, 307 P2d 528, 326 P2d 451 (1958). The distinction between pre-trial and post-trial earning losses was strongly criticized, however, by the dissenting opinions in *Baxter v. Baker, supra* at 380-94.

Because of our continuing concern over this problem we requested both parties to submit supplemental briefs upon whether this court should now reconsider its previous decisions on this subject.

We believe that this case well illustrates the

fallacy of the rule as previously adopted by this court and as perpetuated by the majority in *Baxter v. Baker, supra,* and that the time has now come to reconsider the contentions made in the dissenting opinion by O'Connell, J., in that case and its three-fold effect upon the pleading and trial of an action for personal injuries as follows:

(a) *Pleading of loss of earnings and impairment of earning capacity.*

The dissenting opinion in *Baxter,* in commenting (at 381-85) upon the rule of our previous decisions, pointed out that:

> "* * * the loss before trial, described as 'loss of earnings,' is an item of special damages which is to be specially pleaded, whereas the loss after trial, described as 'impairment of earning capacity,' is an item of general damages and need not be specially pleaded. * * *" *Baxter v. Baker, supra* at 387 (O'Connell, J., dissenting).

It is significant, however, that the dissenting opinion recognized (at 391) that as a matter of giving fair notice to the defendant the complaint in an action in which impairment of earning capacity is claimed, either before trial or in the future, should include an allegation that plaintiff has or will suffer loss of earnings.

This does not mean that the *amount* of such a loss must be pleaded. Thus, as pointed out by the dissent in *Baxter* (at 390-92) we had previously held in *Turney v. Southern Pac. Co.,* 44 Or 280, 299, 75 P 144, 76 P 1080 (1904), that when pleading items of special damages such as medical expenses it was not necessary to plead the amount of such a claim and

that the practice in Oregon of pleading the amount of plaintiff's loss of wages as an item of special damages cannot be attributed to any requirement found in Oregon law.

██ For these reasons, we hold that the complaint in such a case, whether claiming loss of wages prior to trial or impairment of earning capacity either before or after trial, should include an allegation giving notice of such a claim. If a plaintiff was employed at a fixed wage and claims to have suffered lost wages he may still plead the amount of the claimed wage loss, as under present practice. Similarly, a plaintiff who has incurred medical expenses may still plead the amount of such expenses. On the other hand, if plaintiff chooses not to do so, or if he was not employed at a fixed wage, he may plead in general terms that as a result of the injury his earning capacity has been impaired or that he has incurred medical expenses, in unstated amounts, and any such recovery would then necessarily be included in the damages claimed by him. This rule is consistent with what we believe to be the better authorities.[1] To the extent that our previous decisions are inconsistent, they are now overruled.[2]

---

[1] According to the following authorities, loss of earnings, past and future impairment of earning capacity and medical expenses are usually treated as matters to be specially pleaded: McCormick on Damages 37, § 8 (1935); 2 Harper & James, The Law of Torts 1310, § 25.5. See James, Damages in Accident Cases, 41 Cornell L Q 582, 592 (1956); and Miller, Assessment of Damages in Personal Injury Actions, 14 Minn L Rev 216, 224 (1930). See also Bernhard, Damages for Personal Injury—The Law in Oregon, 44 Or L Rev 95, 99 (1965), and 4 Restatement 542, Torts § 904, comment b.

[2] This includes Martin v. Hahn, 252 Or 585, 589, 451 P2d 465 (1969); Fields v. Fields, 213 Or 522, 537, 307 P2d 528, 326

(Continued on page 55)

(b) *Measure of damages and proof of loss of earnings and impairment of earning capacity.*

The majority in *Baxter* appears to accept the proposition that impairment of earning capacity can be claimed for the period between the injury and trial and is not limited to the period after the trial, as indictated by dictum in *Fields v. Fields, supra,* and *Shaw v. Pacific Supply Coop., supra.* Thus, it was held by the majority (250 Or 379) that "* * * [e]vidence of such impairment can be produced during the trial and exploited on argument just as is done with other evidence of losses compensable as general damages. * * *" We agree. Implicit in this holding is the recognition that pre-trial losses are not limited to losses by persons who were employed at the time of the injury and are thus able to offer evidence of the specific amounts of wages, salaries or other earnings lost by them prior to trial. The rule as proposed by the *Baxter* dissent (at 391-92) is as follows:

"* * * [t]he measure of damages for the plaintiff's pre-trial and post-trial loss, whether denominated loss of earnings or impairment of earning capacity, is basically the same and should not be treated differently. Plaintiff is entitled to recover the amount of wages he would have earned but for the injury. The loss should be measured from the time the injury impaired the plaintiff's capacity to earn wages until the disablement ends. It is obvious that plaintiff's loss both before and after trial can be approximated only and that the calculation of the loss must rest upon factors which can be employed only in terms of probabilities, in-

(Continued from page 54)

P2d 451 (1958); Shaw v. Pacific Supply Coop., 166 Or 508, 510-11, 113 P2d 627 (1941), and other cases holding that impairment of earning capacity is an item of general damages and need not be specially pleaded.

cluding the probable period of impairment,[9] the plaintiff's capacity to earn over that period, i.e., what his services would have brought in the labor market taking into account not only plaintiff's capacity at the time of injury but also his probable chances for promotion (or demotion), the probability that the plaintiff would have employed his skill or talent, taking advantage of available opportunities to work, and other pertinent factors.[10]"

We now adopt that rule as consistent with the views expressed by many authorities to the effect that in determining the amount to be awarded for impairment of earning capacity, proof of lost wages is neither required, nor is the amount of such lost wages necessarily controlling in determining the amount to be awarded for impairment of earning capacity.[11]  In

"[9] 'The damages to be given for future loss of earning power depend, of course, upon the probable length of time for which the injury will continue. If a permanent injury has been pleaded and proven, then it becomes material to ascertain the length of life which the plaintiff, in view of his present age and condition of health, may expect. As bearing upon this, in addition to evidence of age and health, the opinion evidence of doctors as to probable length of life is competent. Still another common means of enabling the jury to estimate the probable duration of plaintiff's life is the introduction of standard life tables, or mortality tables, as they are likewise called.' McCormick on Damages, § 86, p. 301-02 (1935)."

"[10] '* * * [I]n predicting what would have been the plaintiff's earning power if he had not been injured, no high degree of certitude can reasonably be required. Probabilities are all we have to act on. Just as the contingencies of an uncertain employment or of a hazardous occupation ought to discount the value of the earning power, so also the chances of promotion should be considered in valuing the probable future earnings.' McCormick on Damages, § 86, p. 301 (1935)."

[11] See Bernhard, Damages for Personal Injury—The Law in Oregon, *supra* note 1 at 99; 2 Harper & James, *supra* note 1 at 1316-318, § 25.8; Developments in the Law—Damages, 61 Harv L Rev 113, 163 (1947); Note, 41 Boston U L Rev 365, 367 (1961); Note, 36 Neb L Rev 605, 610-11 (1957). See also Adskim v. O.-W.R.&N. Co., 134 Or 574, 588, 294 P 605 (1930).

other words, proof of loss of specific wages is evidence of impairment of earning capacity, both before and after the date of trial, but an impairment of earning capacity may also be proved by other evidence.

(c) *Instructions on loss of earnings or impairment of earning capacity.*

The specific issue presented for decision in *Baxter* was one of neither pleading nor proof, but one of instructions to the jury. The majority reversed a judgment for a plaintiff who was not employed at' the time of his injury because of the giving of an instruction that authorized the jury to make an award of special damages for "lost earnings," holding (at 378-80) that only a plaintiff who was employed at the time of injury was entitled to such an instruction. The majority recognized, however (at 379), with reference to one who was not employed when injured:

> "* * * his substantive right to recover for the impairment of his earning capacity can be fully protected by an instruction that the jury is to consider any impairment of earning capacity as a loss compensable under general damages. * * *"

That holding by the majority was strongly attacked by the dissent in *Baxter*, which pointed out (at 383) as follows:

> "* * * [n]ote that the only differentiation which the majority would make in the treatment of these two classes of plaintiffs is in the *instruction to the jury* on the *amount* of damages for the loss of earnings item. In all other respects the employed and the unemployed plaintiff are treated the same. * * *"

Upon reconsideration of this problem we hold that if the plaintiff was employed at a fixed wage

at the time of his injury and if the amount of his lost wages is pleaded as special damages, the jury should be instructed, as under the present practice, that he is entitled to recover as special damages the amount of his lost wages. If, however, such a plaintiff does not plead the amount of his lost wages or if plaintiff was not employed at a fixed wage at that time, but on some basis not susceptible to exact computation, as in this case, or if he was not working at the time of his injury, and if impairment of earning capacity is pleaded in general terms (as previously discussed), an instruction should be given that he is entitled to recover for any impairment of his earning capacity as a result of the injury, for the period both before trial and also after trial, if such impairment is a continuing one, and that any such recovery is to be included in any damages awarded by the jury. Of course, if plaintiff pleads neither the amount of his lost wages nor that his earning capacity has been impaired, he is entitled to no instruction on this subject.

For these reasons we hold that the trial court did not err in holding, in effect, that plaintiff was entitled to make a claim for impairment of pre-trial earning capacity, in allowing plaintiff to amend the complaint so as to allege such a claim, in receiving evidence in support of that claim, and in instructing the jury on that subject, provided, of course, that there was relevant, competent and sufficient evidence on that issue.

2. *The testimony of the average earnings of other Division Managers was not admissible for lack of proper foundation.*

Defendant contends that the testimony of plaintiff's witness of the average income of the 15 or 16

Division Managers for the years 1969 and 1970 was inadmissible as evidence of the impairment of plaintiff's earning capacity in 1970.

In *Kinney v. General Construction Co.*, 248 Or 500, 509, 435 P2d 297 (1968), we held that:

"* * * [t]he impairment of *future earning capacity* is part of general damages and is incapable of exact monetary computation. If the *same kind of evidence were required* as is necessary to prove loss of past wages as special damages, no award would ever be made for loss of future earning capacity. * * *" (Emphasis added)

In this case plaintiff makes no claim for impairment of future earning capacity, but for impairment of his earning capacity between the date of his injury and the time of trial. Because we now hold that the "same kind of evidence" is required to prove impairment of pre-trial earning capacity as is required to prove impairment of future earning capacity, the question presented for decision is whether the testimony offered by the plaintiff in this case was admissible to support a claim for impairment of either pre-trial earning capacity or future earning capacity.

In *Brown v. O.-W.R. & N. Co.*, 63 Or 396, 128 P 38 (1912), this court recognized (at 407) that "the question of earning capacity is a difficult one," and went on (at 409) to state that:

"A fair rule would seem in cases of this character to be that any evidence which would indicate fairly the capacity of the plaintiff to earn money in his usual vocation, and the probability of his being able to do so in the future should be admitted; but, where such evidence consists of mere guesswork and speculation upon what might happen in the future, it should be excluded. Such testimony

in any court is seldom, or never, conclusive, and merely furnishes one factor in solving the equation of a man's earning capacity."

To the same effect, see Annot., 18 ALR3d 88, 97 (1968); Oleck, Damages to Persons and Property (rev ed 1961) 275, § 182. See also *Fulton v. B. F. Goodrich Co.*, 260 Or 245, 249, 490 P2d 178 (1971).

■ In such cases the usual method of proving impairment of earning capacity is to offer evidence of the difference in the actual earnings of the plaintiff before and after the injury. Annot., 18 ALR3d 88, 99-100 (1968). This, however, is not the exclusive evidence by which impairment of earning capacity may be proved. See Annot., 18 ALR3d 88, 100, and Oleck, *supra* at 275, 280, §§ 182, 183. See also McCormick on Damages 300, § 86 (1935), and 3 Personal Injury-Damages 127, § 3.04 [4] [a] (Frumer, Benoit & Friedman ed 1965) and authorities cited in note 3, *supra*.

In considering whether impairment of earning capacity may be proved by evidence of the earnings of other persons (much less the *average* earnings of a number of other persons) the general rules of relevance must be considered, including the rules relating to evidence of "other transactions."

Evidence of "other transactions," such as other crimes, other contracts and other representations, is usually inadmissible. When such evidence is admissible as substantive evidence, however, it is usually subject to the rule as stated in 2 Wigmore on Evidence (3d ed 1940) 425, § 442, that in order for evidence of "other transactions" to have probative value, and thus be relevant, there must be "* * * substantial similarity, i.e., a similarity in such circumstances or conditions as might supposably affect the result in

question." Even then, according to 2 Wigmore, *supra* at 428, § 443, such evidence may be rejected based upon considerations of (1) surprise or (2) confusion of issues. But if such evidence is relevant Wigmore would leave these considerations to the discretion of the trial judge. 2 Wigmore, *supra* at 430, § 444.

To the same effect, this court in *Ragan v. MacGill,* 134 Or 408, 410, 292 P 1094 (1930), held that in order for evidence of similar transactions to be admissible:

"* * * the conditions must appear to be substantially the same, and unless this appears it is not within the discretion of the court to admit the testimony. * * *"

See also *Kelty v. Fisher et al,* 101 Or 110, 118, 199 P 188 (1921).

On the question of impairment of earning capacity most courts now apparently hold that it is proper to consider not only plaintiff's actual employment at the time of his injury, but that under some circumstances consideration may also be given to other employments for which plaintiff was qualified at that time and the usual compensation paid for any such other employment. See Oleck, *supra* at 292, § 184; 3 Personal Injury-Damages, *supra* at 142, § 304[b]; and Annot., 15 ALR2d 418 (1951). See also McCormick, *supra* at 301, § 86. See also *Metz v. Great Atlantic and Pacific Tea Company,* 30 Misc 2d 258, 215 NYS2d 175 (Sup Ct Trial T 1961); *City of Anchorage v. Steward,* 374 P2d 737 (Alas 1962), and *Southern Coach Lines v. Wilson,* 31 Tenn App 240, 214 SW2d 55 (1948).

Thus, in *Ramaswamy v. Hammond Lumber Co.,* 78 Or 407, 425, 152 P 223 (1915), this court held that:

"* * * [t]he fact that the plaintiff when in-

jured was working as a common laborer at $2 per day would not prevent him from pleading and proving that he was skilled in another trade and capable of earning more: * * *."

But see *Weinstein v. Wheeler*, 127 Or 406, 414, 257 P 20, 271 P 733 (1928), and *Parker v. Norton*, 143 Or 165, 176, 21 P2d 790 (1933).

It does not follow, however, even when the plaintiff has shown that he has the qualifications for employment in another position or for promotion to another position, that the compensation that he would have been paid in that position can be established by evidence consisting of average earnings of other persons particularly where, as in this case, the compensation paid to such other persons was in the form of commissions, the amount of which depended upon the efforts of still other persons. No case directly in point has been cited by either party.⊛

---

⊛ In Fielding v. Kaplan, 72 RI 352, 51 A2d 492 (1947), plaintiff was a truck driver and offered evidence of the earnings of other drivers who worked on the job that plaintiff was about to take over at the time of his injury, but did not do so because of that injury. It appeared that such earnings by other drivers included commissions on sales in addition to a fixed weekly wage. It was held that such evidence was properly excluded as "clearly irrelevant" and "speculative" as a basis for estimating his wages on a job at which he had never worked.

In Wilson v. Kansas City Public Service Co., 354 Mo 1032, 193 SW2d 5 (1946), an injured laundry truck driver who was paid on a commission basis offered evidence of the average earnings of laundry truck drivers with comparable routes, but employed by another laundry. This evidence was held to be not only hearsay, but "wholly irrelevant."

On the other hand, in Werthan Bag Corp. v. Agnew, 202 F2d 119 (6th Cir 1953), an injured salesman was permitted to offer evidence that prior to his injury he ranked 13th among the salesmen employed by his employer (who were paid a bonus based on sales and relative standings) while in the year of his injury his standing declined to 25th.

In this case, however, plaintiff was employed on a commission basis and the amount of such commissions depended upon the production of other persons who were under plaintiff's supervision. In this respect, the case is somewhat similar to cases in which the injured person was the owner of a business of such a nature that the amount of his income depended not only upon his own efforts, but also in large part upon the efforts of his employees. In such cases it is generally held that past income for previous years from such a business is not admissible on the issue of the impairment of the earning capacity of its owner. See Annot., 45 ALR3d 345, 352-53 (1972); 3 Personal Injury-Damages, *supra* at 150, § 3.04 [c]; and 4 Restatement 634, Torts § 924, comment *c*. Cf. *Shaw v. Pacific Supply Coop., supra* at 510, and *Pearson v. Schmitt,* 259 Or 439, 487 P2d 84 (1971). On the other hand, criteria applicable in cases involving claims for loss of profits are not controlling in cases involving employees whose earning capacity has been impaired as the result of a personal injury. See *Lehr v. Gresham Berry Growers et al,* 231 Or 202, 213, 372 P2d 488 (1962).

The disputed testimony in this case was that of a plaintiff's witness who testified to the average earnings of the 15 or 16 Division Managers for the years 1969 and 1970. That witness also stated that the earnings of such Division Managers depended upon the number of insurance agents under their supervision, as well as the effectiveness of such agents. Additional variable factors would include, among others, the location of the offices involved and whether experienced agents in some of such offices left their employment for reasons beyond the control of their Division Man-

agers, leaving them to recruit and train new and inexperienced agents.

As previously stated, the evidence required to support a claim for impairment of earning capacity need not be "capable of exact monetary computation" and any evidence which would "indicate fairly the capacity of the plaintiff to earn money in his usual vocation" should be admitted.

Of necessity the jury must speculate to some extent in cases involving claims for impairment of future earning capacity. To a lesser extent this is also true in cases involving claims for impairment of past or "pre-trial" earning capacity, such as those in which a plaintiff was unemployed at the time of trial, as in *Baxter,* or in those in which the plaintiff was employed on a basis such that his probable future earnings are not susceptible to "exact monetary computation," as in this case.

In determining the impairment of the earning capacity of this plaintiff it is entirely conceivable that earnings of other Division Managers who were similarly situated, or their average earnings, would have sufficient probative value to be admissible in evidence, depending upon the particular facts.

Because, however, the earnings of the various Division Managers depended largely upon the number and experience of the agents working under them, it would follow that if it should appear that plaintiff had only one or two inexperienced agents working under him during 1970, while most or all of the other Division Managers each had 10 or more experienced agents working under them that year, no one could reasonably urge that the average earnings of the other Division Managers for 1970 would have sufficient

probative value to be admissible, particularly in view of the collateral issues opened up by such an inquiry, not to speak of the possible elements of surprise and prejudice to the defendant.

On the other hand, a trial judge, in the exercise of his discretion, could properly hold that plaintiff need not show that the number of agents working under other Division Managers, or their experience, be identical to those working under plaintiff in order to properly hold that such evidence would have sufficient probative value to be admissible.

The point is, however, that before such evidence is admitted, and as a foundation for its admission, the plaintiff must show that the situation of the other Division Managers was sufficiently similar to enable the trial judge to make an informed decision in ruling upon the admissibility of such evidence.

Although the trial judge in such a case should have considerable discretion in such a matter he cannot be said to have properly exercised such a discretion unless in doing so he not only has sufficient facts before him to properly consider this question, but unless he then applies the proper legal standard or rule in deciding whether such evidence should be admitted. See *State v. Lewis,* 113 Or 359, 364, 230 P 543, 232 P 1013 (1925), and *Carter v. Moberly,* 263 Or 193, 501 P2d 1276 (1972).

In this case, on the contrary, plaintiff made no showing, by way of a foundation for such evidence, that the situations of the other Division Managers were substantially similar. Moreover, in ruling that evidence of the average earnings of other Division Managers was admissible the trial judge did not, and could not, in the absence of such a showing, consider whether

or not the situations of the other Division Managers were sufficiently similar to give any substantial probative value to testimony of their average earnings. Thus, in effect, he held that this evidence was admissible regardless of how dissimilar the situations of the other Division Managers might be, compared with that of this plaintiff.

These questions were properly raised by defendant's objections to the relevance of such testimony. Because the trial court erred in overruling that objection this case must be remanded for a new trial. At that time plaintiff may again offer such testimony, but only after first laying a proper foundation for such testimony, in order that the trial court may then properly rule upon its admissibility.

3. *Defendant was also improperly deprived of the right to demand production of records or other facts for use in cross-examination.*

Even if the trial judge did not err in receiving this evidence over defendant's objection to its relevance, this case must still be remanded for a new trial for another reason.

Upon the initial offer of the testimony of plaintiff's witness relating to the average earnings of the 15 or 16 other Division Managers defendant objected that such testimony was hearsay. This may have been a valid objection because it is apparent from the testimony of this witness that he had no first-hand information relating to the earnings of other Division Managers and that he relied upon information given to him by other persons. See *Gardner v. Dollina and Elliott et al,* 206 Or 1, 5-6, 288 P2d 796 (1955), and *Goodnough Merc. Co. v. Galloway,* 48 Or 239, 248, 84 P 1049 (1906).

The testimony of the average earnings of 15 or 16 other Division Managers for the entire years of 1969 and 1970 obviously depended upon facts recorded in the payroll records of the employer with the result that such testimony was, in effect, a "summary" of the facts shown by such payroll records for 15 or 16 other employees. Under these facts defendant has the right to demand that as a condition of the offering of such testimony the payroll records for these other employees be produced in court in order that the correctness of the testimony of "average earnings" could be tested by inspection of such records or that the material be made available to defendant's attorney for use in cross-examination. 4 Wigmore on Evidence (Chadbourn rev 1972) 535, § 1230. See also McCormick on Evidence (2d ed 1972) 564, § 233, and *State of Oregon v. Monk,* 199 Or 165, 183, 260 P2d 474 (1953).

Defendant did not make that objection and also did not pursue her previous hearsay objection. Had either of those objections been pursued, plaintiff might well have been forced to either withdraw the offer of this testimony or ask for a recess in the jury trial—a difficult choice for a plaintiff. Because defendant did not press either of those objections, they were probably waived for the purposes of that trial.

Instead of pursuing those objections, however, and perhaps as an alternative, for practical reasons, defendant requested that plaintiff's witness produce for her use in cross-examination information showing the location of each Division Manager's office and the number of agents working under each Division Manager and plaintiff's witness promised to produce that information. Thus, in effect, defendant made a demand which was far less onerous to plaintiff than the

consequences of the objections which defendant may well have had a right to make and plaintiff agreed to produce the demanded information.

■ Under these circumstances we hold that defendant was entitled to hold plaintiff to his promise to produce the requested information and that when, after a week-end recess, plaintiff's witness was unable to produce that information, defendant's motion to strike the testimony of the average earnings of the 15 or 16 other Division Managers was well taken. For the same reasons, we hold that the trial court erred in denying that motion and in requiring defendant's counsel to complete her cross-examination without that requested information.

We also reject plaintiff's contention that the admission of such testimony was not prejudicial to the defendant, regardless of whether or not there was what plaintiff refers to as other evidence providing an "independent basis" to support the verdict.

For all of these reasons the judgment of the trial court is reversed and this case is remanded for a new trial.

McALLISTER, J., specially concurring.

If one analyzes the majority opinion in this case he finds that it makes no change in the law with regard to the recovery of loss of earnings and of damages for impairment of earning capacity as enunciated in the opinion of the majority in *Baxter v. Baker,* 253 Or 376, 451 P2d 456, 454 P2d 855 (1969). The majority opinion in this case frankly concedes as much.[1]

---

[1] "The majority in *Baxter* appears to accept the proposition that impairment of earning capacity can be claimed for the period

(Continued on page 69)

If the opinion in this case serves any purpose, it merely emphasizes what was admittedly held in *Baxter*, that damages for impairment of earning capacity can be pleaded, proved, and recovered for the period before trial as well as for the period thereafter.

The majority opinion in this case makes no change in the law with regard to the pleading, proof and recovery as special damages of loss of earnings and medical expenses.

Since the majority opinion merely reiterates the holding in *Baxter v. Baker,* I concur.

DENECKE, J., specially concurring.

I concur in the decision of the majority; however, I do not concur in all of the majority's statements about pleading and instructing on loss of earnings.

The majority agrees that this case illustrates the fallacy of the rule perpetuated by the majority in *Baxter v. Baker,* 253 Or 376, 451 P2d 456, 454 P2d 855 (1969); however, the majority does not adopt the reasoning of the dissent in *Baxter v. Baker,* supra (253 Or at 380). My position is as expressed in joining Mr. Chief Justice O'CONNELL's dissent in *Baxter v. Baker,* supra (253 Or at 393): "* * * [I]f we are going to make new law we should do so along the logical lines suggested in Mr. Justice O'CONNELL's opinion."

The plaintiff may plead to the effect that he or she earned less between the time of injury and trial

---

(Continued from page 68)

between the injury and trial and is not limited to the period after the trial, as indicated by dictum in Fields v. Fields, supra, and Shaw v. Pacific Supply Coop., supra. Thus, it was held by the majority (at 379) that "* * * [e]vidence of such impairment can be produced during the trial and exploited on argument just as is done with other evidence of losses compensable as general damages. * * *" We agree. * * *"

because of the injury and will continue to earn less. This need not be labeled loss of earnings or earning capacity. A specific amount of claimed loss may be pleaded. Such an allegation fulfills the notice function of a pleading.

The trial court should instruct the jury that plaintiff has made this claim and if it finds plaintiff has incurred such a loss it should compensate plaintiff for the same. These losses should not be labeled "special" or "general" damages. The verdict forms should not be segregated into awards for general and special damages,—merely provide a single blank space in which to insert the amount of "damages" to be awarded.

BRYSON, J., concurring in part; dissenting in part.

I concur in that part of the majority opinion which holds:

"* * * [I]f plaintiff * * * was not employed at a fixed wage, he may plead in general terms that as a result of the injury his earning capacity has been impaired * * * and any such recovery would then necessarily be included in the damages claimed by him. * * *"

This is in accord with the majority opinion in *Baxter v. Baker,* 253 Or 376, 451 P2d 456, 454 P2d 855 (1969).

I dissent from that part of the majority opinion which states:

"* * * If a plaintiff was employed at a fixed wage and claims to have suffered lost wages he *may* still plead the amount of the claimed wage loss, as under present practice. Similarly, a plaintiff who has incurred medical expenses *may* still plead the amount of such expenses. On the other hand, if plaintiff chooses not to do so, * * * he

may plead in general terms that as a result of the injury his earning capacity has been impaired or that he has incurred medical expenses, in unstated amounts, and any such recovery would then necessarily be included in the damages claimed by him. * * *" (Emphasis supplied.)

If plaintiff is employed and claims lost wages or medical expenses he should be required to plead his lost wages and medical expenses to time of trial. The plaintiff always has his right to amend the complaint to conform to the evidence before the case is submitted to the jury. *Quirk v. Ross,* 257 Or 80, 83, 476 P2d 559 (1970).

The majority opinion says the plaintiff is not required to so plead but he *may* plead such losses.

Oregon's civil procedure practice does not provide for a pretrial order to settle these matters. At some time prior to instructing the jury, the trial court, in the case of an employed plaintiff, is going to have to determine the amount of plaintiff's lost wages and medical expenses that are supported by substantial evidence. If there is no such evidence to support such losses, I assume the matter will not be submitted to the jury.

In short, I believe this part of the majority opinion will create confusion for the Bar and the trial judges. It is the fundamental desire of courts and responsible counsel to encourage and seek settlement of cases. The pleading of lost wages and medical expenses to the time of trial has made settlement more attainable without prolonged discovery proceedings. We should not deviate from a pleading and procedural practice that has obtained admirable results in our trial courts.