VOSBERG, *Respondent,*

*v.*

MT. HOOD STAGES, INC., *Appellant.*

548 P2d 1314

*William L. Hallmark,* Portland, argued the cause for appellant. With him on the brief were Jones, Lang, Klein, Wolf & Smith.

*James W. Walton,* Corvallis, argued the cause for respondent. On the brief were Ringo, Walton & Eves.

McALLISTER, J.

## McALLISTER, J.

Joanne E. Vosberg brought this action against Mt. Hood Stages, Inc., for damages for personal injuries suffered when she was struck by one of Mt. Hood's buses at a street intersection in Corvallis. The accident occurred on December 28, 1973, between six o'clock and seven o'clock, p.m., and it was dark.

The case was tried to a jury, which returned a special verdict, finding plaintiff twenty per cent negligent and defendant eighty per cent negligent. A judgment was entered for plaintiff and defendant appeals.

The accident occurred at the intersection of Monroe and Third streets, which was controlled by traffic lights. Monroe street runs east and west and Third street runs north and south. Both plaintiff and the bus were traveling east on Monroe. The plaintiff proceeded on a "walk" signal to cross the intersection in the crosswalk from the northwest corner toward the northeast corner of the intersection. The bus, which approached the intersection from behind plaintiff, had a green light and made a left turn to go north on Third street. The bus struck plaintiff when she had proceeded about twenty feet from the curb.

The plaintiff testified that she looked to her right before starting to cross the street and neither saw nor heard a vehicle approaching.

The bus driver testified that he looked to his left at the curb and crosswalk before turning, but did not see any pedestrian. His view of the curb was partially obstructed by a light post and a mailbox, but his view of the crosswalk was clear. He did not sound his horn before or as he turned.

The defendant assigns as error the denial of his motion to strike from plaintiff's complaint the allegation that the bus driver was negligent in failing to sound his horn as he was turning. The defendant also assigns as error the giving of the following instruction:

[ 789 ]

"I would instruct you that the law of the State of Oregon provides that the driver of any vehicle upon a highway before starting, stopping, changing lanes or turning from a direct line shall first see that such movement can be made in safety. If any pedestrian may be affected by such movement, the driver shall give a clearly audible signal by sounding the horn."

The pertinent part of the above instruction is taken verbatim from ORS 483.126(1).[1]

██ ██ Defendant contends that because its driver testified that he did not see plaintiff he was under no duty to sound his horn as he approached the crosswalk. We find no merit in that contention. The statute first required the bus driver, before turning his bus at the intersection, to see that such movement could be made in safety and, secondly, to sound his horn if any pedestrian would be affected by such movement. The jury could have found that defendant was negligent in both particulars. Admittedly, the plaintiff was in the crosswalk and was struck by the bus and the jury could have found that she had walked twenty feet from the curb before she was hit. As the plaintiff crossed the street the bus was turning toward her as it made its left turn to go north on Third street. Whether the bus driver was negligent in failing to see that the turn could be made in safety and whether he should have seen plaintiff and sounded his horn to warn her of the approach of the bus were questions for the jury. The jury could also have inferred from the established facts that the bus driver did see plaintiff, but, nevertheless, failed to sound his horn as required by the statute. The trial court did not err in instructing the jury as quoted above. See *Maletis v. Portland Traction Co.,* 160 Or 30, 36, 83 P2d 141 (1938); *Dixon v.*

---

[1] ORS 483.126(1):

"The driver of any vehicle upon a highway before starting, stopping, changing lanes or turning from a direct line shall first see that such movement can be made in safety. If any pedestrian may be affected by such movement the driver shall give a clearly audible signal by sounding the horn. * * *"

*Raven Dairy,* 158 Or 186, 195-196, 75 P2d 347 (1938); *Sears v. Goldsmith,* 136 Or 151, 155, 298 P 219 (1931).

Defendant next contends that the court erred in permitting the jury to award plaintiff damages for "any impairment of earning capacity resulting from the injury which it is reasonably probable the plaintiff has suffered *in the past* or will suffer in the future."

The defendant contends that there was no evidence of "past earning capacity," but makes no similar contention regarding future earning capacity. Defendant does not challenge plaintiff's right to elect to plead and recover loss of pretrial earning capacity as general damages and cites *Conachan v. Williams,* 266 Or 45, 511 P2d 392 (1973).

Defendant's brief contains the following statement:

> "Plaintiff, although both self employed and employed for a salary, chose to plead impairment of pre-trial earning capacity as an item of general damages. Defendant does not challenge her right to follow this procedure."

Defendant argues, however, that "plaintiff's proof of impairment of pre-trial earning capacity was entirely inadequate."

Plaintiff was 47 years old at the time of the accident. She and her husband own the general store at Blodgett, a small community west of Corvallis. Plaintiff's husband worked full time as a log hauler and plaintiff for many years had operated the store and in connection therewith a postoffice, of which she was the postmistress. There was uncontradicted evidence that prior to the accident plaintiff usually worked seven days a week and put in long hours at the store, which she operated with the help of one full time employe and occasional part time help. According to the evidence plaintiff, before the accident, engaged in hard physical labor. She was required to handle sacks of feed weighing up to 100 pounds, pump gas, haul groceries from the wholesaler, unload the cases of

groceries, stock the shelves, and perform other work requiring physical exertion.

There was evidence that after the accident plaintiff could not work at all for about three months and thereafter had to substantially limit her hours of work and the nature of work performed. She had to hire additional help in the store because of her disability. At the time of trial in June 1975 plaintiff's injuries still limited the hours she could work and work she could do.

Defendant seems to argue that because pretrial impairment of earning capacity can usually be proved with more specificity than future impairment of earning capacity, the plaintiff is required to prove "impairment of pre-trial earnings where the evidence is admittedly readily available."

In this case plaintiff chose to plead impairment of past and future earning capacity as an element of general damages. The only allegation in plaintiff's complaint alleging damages reads as follows:

> "* * * Said injuries have caused the plaintiff pain and discomfort, will cause her pain and discomfort in the future, were and are permanent, *have decreased the plaintiff's earning capacity in the past, and will decrease her earning capacity in the future.* * * *" (Emphasis added.)

As defendant concedes, this procedure was authorized by *Conachan v. Williams, supra.* In that case we said with regard to pleading impairment of earning capacity as follows:

> "For these reasons, we hold that the complaint in such a case, whether claiming loss of wages prior to trial or impairment of earning capacity either before or after trial, should include an allegation giving notice of such a claim. If a plaintiff was employed at a fixed wage and claims to have suffered lost wages he may still plead the amount of the claimed wage loss, as under present practice. Similarly, a plaintiff who has incurred medical expenses may still plead the amount of such expenses.

On the other hand, *if plaintiff chooses not to do so,* or if he was not employed at a fixed wage, *he may plead in general terms that as a result of the injury his earning capacity has been impaired* or that he has incurred medical expenses, in unstated amounts, and any such recovery would then necessarily be included in the damages claimed by him. This rule is consistent with what we believe to be the better authorities. To the extent that our previous decisions are inconsistent, they are now overruled." 266 Or at 54. (Emphasis added.)

With regard to the proof of earning capacity we said:

"We now adopt that rule as consistent with the views expressed by many authorities to the effect that in determining the amount to be awarded for impairment of earning capacity, proof of lost wages is neither required nor is the amount of such lost wages necessarily controlling in determining the amount to be awarded for impairment of earning capacity. In other words, proof of loss of specific wages is evidence of impairment of earning capacity, both before and after the date of trial, but an impairment of earning capacity may also be proved by other evidence." 266 Or at 56-57.

And, finally, with regard to instructing the jury regarding earning capacity, we said:

"Upon reconsideration of this problem we hold that if the plaintiff was employed at a fixed wage at the time of his injury and if the amount of his lost wages is pleaded as special damages, the jury should be instructed, as under the present practice, that he is entitled to recover as special damages the amount of his lost wages. If, however, such a plaintiff does not plead the amount of his lost wages or if plaintiff was not employed at a fixed wage at that time, but on some basis not susceptible to exact computation, as in this case, or if he was not working at the time of his injury, and if impairment of earning capacity is pleaded in general terms (as previously discussed), an instruction should be given that he is entitled to recover for any impairment of his earning capacity as a result of the injury, for the period both before trial and also after trial, if such impairment is a continuing one, and that any such recovery is to be included in

[ 793 ]

any damages awarded by the jury. Of course, if plaintiff pleads neither the amount of his lost wages nor that his earning capacity has been impaired, he is entitled to no instruction on this subject." 266 Or at 57-58.

In this case plaintiff in her complaint properly gave notice of her claim for damages for impairment of earning capacity, both past and future. She also introduced uncontradicted evidence that her earning capacity was in fact impaired prior to trial and that such impairment would probably continue into the future. Under instructions to which no objection has been made, the jury returned plaintiff a verdict for general damages. Since there was ample evidence of pretrial impairment of earning capacity the judgment is affirmed.